.CONLEY HAL FRANKLIN *v.* STATE
OF MARYLAND

[No. 41, September Term, 1969.]

*Decided November 18, 1969.*

The cause was argued before MURPHY, C. J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Carl Berenholtz* and *Charles B. Heyman* (*George B. Cavanagh* on brief) for appellant.

*T. Joseph Touhey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel*

A. *Green, Jr., State's Attorney for Baltimore County,* and L. *Robert Evans, Deputy State's Attorney for Baltimore County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant Franklin was convicted by the court sitting without a jury of unlawfully possessing heroin in violation of Maryland Code, Article 27, Section 277 [1] and sentenced to one year in the Baltimore County Jail. On this appeal he contends that the evidence was legally insufficient to support the conviction.

There was evidence showing that on the night of July 22, 1968 appellant was, in some manner not disclosed by the record, brought into the emergency room at City Hospitals in a semi-conscious state and unable to talk. The hospital physician then in attendance, Dr. Martin Levinson, testified that several hours after appellant's admission to the hospital he took a medical history from him; that appellant was then "essentially fully conscious, but very sleepy"; and that appellant told him at that time "that he had taken an overdose of heroin intravenously and that he had passed out following taking this overdose." Levinson testified:

> "Given the information that he gave us that he'd taken heroin, his condition was entirely compatible with having had an overdose of heroin."

Dr. Levinson mentioned specifically the fact that appellant was "bluish in color with some blue tinges around his mouth and extremeties," and that his eyes "were remarkable for the constricted pupils." Dr. Levinson testified that many patients "do have constricted pupils following an overdose of heroin." On cross-examination the doctor testified that the symptoms exhibited by ap-

---

1. "It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this subtitle."

pellant could have been the result of extreme alcoholism but that he did not smell any odor of alcohol on the appellant. Levinson treated appellant for having taken an overdose of narcotics, after which appellant was arrested and charged with the present offense.

Appellant testified that he had been drinking heavily on the night in question; that he didn't remember being brought to the hospital and had no recollection of making any statements to the hospital physician. Asked on cross-examination if he took any kind of narcotics that night, he stated: "If I did it was not to my knowledge."

On this evidence, the trial judge, in finding appellant guilty of unlawful possession of narcotics, reasoned that his incriminatory statements to the hospital physician were tantamount to a confession of guilt, and that the confession was sufficiently corroborated by the medical findings so as to show that appellant "did have an overdose of heroin." [2]

In maintaining that the evidence was insufficient to show that he unlawfully possessed heroin, as charged in the indictment, appellant argues that it is not a crime to be under the influence of narcotics; that appellant's statement to the physician that he had taken the overdose of heroin cannot, without more, establish the fact that he "possessed" the heroin within the meaning of Section 277; that the evidence was just as consistent with a medical determination of extreme alcoholism as it was with a finding of heroin overdosage, particularly since there was no evidence of needle marks, nor was it shown by either direct or circumstantial evidence that he administered the drug to himself. Appellant points out that to sustain a conviction of possessing narcotics based on his own statement to the physician, coupled with medical findings compatible therewith, "would substantially deter a user or addict from voluntarily submitting himself to a doctor or hospital for medical help, for it would mean that such person could be subjected to in-

---

2. Appellant was acquitted of the second and third counts of the indictment charging, respectively, control and sale of heroin.

dictment, trial and a finding of guilty, because he was under the influence of narcotics at the time he submitted himself for this medical attention."

In *Haley v. State,* 7 Md. App. 18, we held on authority of *Bryant v. State,* 229 Md. 531, that the terms "possession" and "control," as employed in Section 277, must be given their ordinary meanings; that the term "control" meant "to exercise restraining or directing influence over" and thus the term related to authority over what is not in one's physical possession; that the term "possession" meant "the act or condition of having in or taking into one's control or holding at one's disposal." Once a narcotic drug is injected into the vein, or swallowed orally, we think it apparent that it is no longer within "one's control" or held at "one's disposal." And it would likewise be beyond the taker's ability to exercise any restraining or directing influence over it. Consequently, once the drug is ingested and assimilated into the taker's bodily system, it is no longer within his control and/or possession in the sense contemplated by Section 277.

But evidence showing that a person has a prohibited narcotic drug within his system, while not *per se* constituting possession or control under Section 277, would tend to show circumstantially that he was in possession and/or control of the drug prior to taking it. In *Peachie v. State,* 203 Md. 239, the police observed through a hole in the door Peachie and two others "sitting around a table on which was a glass of water containing tablets, three hypodermic syringes and needles, and a 'smoked-bottomed' teaspoon." The arresting officer testified that he saw Peachie throw against the wall a hypodermic needle which he had in his hand, and a handkerchief which had on it several splotches of blood. The blood marks on the handkerchief were still wet. Peachie had fresh needle marks on him. Medical testimony established that capsules found on the table and the glass, teaspoon, and two of the syringes contained traces of opium derivatives. In affirming Peachie's conviction of possession of heroin, the court said (page 242):

"* * * The evidence that Peachie had a hypodermic needle in his hand and threw it away, along with a handkerchief containing fresh blood stains, and that he had fresh needle marks on his arm, would permit the inference that he had taken an injection of the drug just prior to the entry of the officers. This circumstantial evidence points clearly to the fact that he had administered the drug to himself. *Of course, if that fact is assumed, it necessarily follows that he had possession and control of the instrument and its contents at the time of the injection,* as well as an intent and purpose to administer the drug. * * *" (Emphasis supplied.)

In *McCuen v. State,* 3 Md. App. 73, involving a conviction for unlawful possession of narcotics by a prison inmate, we noted that although there was evidence showing that his cell was freely visited by other inmates, the fact that narcotics were found therein, coupled with the fact that at the time the narcotics were discovered the inmate defendant was under the effects of some kind of drug, constituted legally sufficient evidence to convict.

Unlike the facts in either *Peachie* or *McCuen,* the primary evidence in the present case of appellant's possession of narcotics stems, by way of an inference, from his own statement. As Section 277 does not by its terms purport to proscribe the "use" of prohibited narcotics, appellant's statement that he took an overdose of heroin was not literally a confession; rather, it is more in the nature of a significantly incriminating admission.[3] But whether appellant's statement constituted a confession

---

3. That there is a real, and not a fanciful, difference between a confession and an admission in a criminal case is clear, *viz.,* a confession is a direct acknowledgment of guilt on the part of the accused and, by the very force of the definition, excludes an admission, which, of itself, as applied in criminal law, is a statement by the accused direct or implied, of facts pertinent to the issue, and tending, in connection with proof of other facts, to prove guilt, but of itself insufficient to authorize a conviction. *Stewart v. State,* 232 Md. 318; *Vincent v. State,* 220 Md. 232.

or admission is immaterial, for the rule is the same in either case, namely that an extrajudicial confession or incriminatory admission of the accused does not warrant a conviction unless there is also independent evidence to establish the *corpus delicti, i.e.,* the facts that are necessary to show that a crime has been committed. *Miller v. State,* 251 Md. 362; *Holland v. State,* 244 Md. 671; *Pierce v. State,* 227 Md. 221; *Burton v. State,* 7 Md. App. 671; *Koprivich v. State,* 1 Md. App. 147. Otherwise stated an extrajudicial confession or statement by a person accused of a crime, unsupported by other evidence, is insufficient to warrant a conviction, but if there is evidence, independent of the confession, which relates to and tends to establish the *corpus delicti* the conviction may be justified. *Johnson v. State,* 238 Md. 140; *Bradbury v. State,* 233 Md. 421; *Whitmer v. State,* 1 Md. App. 127. The sufficiency of this independent evidence need not establish, by itself, the *corpus delicti* beyond a reasonable doubt, but any facts and circumstances that are substantial in nature and fortify the truth of the confession or statement are sufficient to support a conviction. *Miller v. State, supra.* The character, nature, and amount of independent proof of the *corpus delicti* need not, of itself, be full and positive; it may be circumstantial in nature when direct evidence is not available. In short, the existence of such independent proof is to be determined largely by the circumstances of each particular case. *Miller v. State, supra; Pierce v. State, supra.* And it has been held that testimony in proof of the *corpus delicti* is sufficient if it establishes facts that are consistent with the commission of a crime, although they may at the same time indicate, or be consistent with, a noncriminal causation. *See 2 Wharton's Criminal Evidence* (12th Edition) § 394.

We think appellant's statement "that he had taken an overdose of heroin intravenously," after which he had "passed out," justifies not only the inference that prior to taking such drug, he necessarily was in possession of it, but also the inference, absent affirmative contrary

evidence, that the drug was self-administered, or administered by another at his direction (thus placing him in constructive possession of the drug).[4] That appellant's physical condition was consistent with his having taken an overdose of heroin is clear from Dr. Levinson's testimony. Although his medical conclusions appear based, in part, upon information given by the appellant, we think the doctor's testimony, considered in its totality, shows sufficiently that appellant's symptomatology, particularly his "bluish" and unconscious condition, and the constriction of the pupils of his eyes, provides the requisite quantum of corroborative independent evidence to establish, circumstantially, that he did indeed possess narcotics in violation of Section 277. We are, of course, mindful of the doctor's admission that appellant's symptoms could also have indicated a state of extreme alcoholism; we note, however, that no odor of alcohol was detected upon the appellant by the attending physician, and that appellant was treated for an overdose of heroin.

That this decision will likely deter drug addicts and users from seeking medical aid when they need it is, unfortunately, the all too plain result of this case. Communications made to a physician in his professional capacity are not privileged under the common law of Maryland, nor, with some exceptions in the case of psychiatrists, have they been made so by statute. See *Robinson v. State*, 249 Md. 200, 221; *O'Brien v. State*, 126 Md. 270, 284; *Leszynski v. Russ*, 29 F.R.D. 10 (D.C. Md.). To be treated and likely jailed on the one hand, or become seriously ill, even die, by avoiding desperately needed medical attention, on the other hand, is indeed a Hobson's choice, one seemingly at odds with recent legislative enactments purporting to recognize that narcotics addicts are sick people, physically and psychologically, who need medical and psychiatric care, not punitive incarceration and "cold turkey." See the Preamble

4. The duration of the possession is immaterial in determining guilt. *See Haley v. State, supra,* at page 32.

to Chapter 376, Acts of 1966, now codified as Maryland Code, Article 27, Section 306B, and Maryland Code, Article 43B, entitled "Comprehensive Drug Abuse Control and Rehabilitation Act," which became effective July 1, 1969. But under the law as it presently exists in Maryland, and applied to the facts of this case, we can reach no other conclusion than to affirm appellant's conviction. If the law is to be changed to prohibit the State from securing convictions on facts similar to those in the instant case, it must be done by the legislature.

*Judgment affirmed.*