[Cite as *State v. Foreman*, 2020-Ohio-3145.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 13-19-01

    v.

KELLY A. FOREMAN,                   O P I N I O N

    DEFENDANT-APPELLANT.

---

Appeal from Seneca County Common Pleas Court
Trial Court No. 18 CR 0164

Judgment Affirmed

Date of Decision:   June 1, 2020

---

APPEARANCES:

    *Adam Charles Stone* **for Appellant**

    *Rebeka Beresh* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Kelly A. Foreman ("Foreman"), appeals the January 18, 2019 judgment entry of sentence of the Seneca County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} Foreman gave birth to J.B. on March 15, 2018. (Nov. 26, 2018 Tr. at 10). After J.B. exhibited symptoms of neonatal-abstinence syndrome, he was tested for the presence of illegal substances. (*Id.* at 12-13). J.B.'s toxicology report revealed the presence of cocaine in his urine, cocaine in the umbilical-cord tissue, and cocaine, marijuana, amphetamines, and buprenorphine in his meconium. (*Id.* at 15). On July 25, 2018, the Seneca County Grand Jury indicted Foreman on one count of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(a), a fifth-degree felony. (Doc. No. 1). On July 27, 2018, Foreman appeared for arraignment and entered a plea of not guilty. (Doc. No. 6).

{¶3} The case proceeded to a bench trial on November 26, 2018. (Nov. 26, 2018 Tr. at 1). At the conclusion of all evidence, the trial court found Foreman guilty of the count of the indictment. (Doc. No. 24). On January 17, 2019, the trial court sentenced Foreman to three years of community-control sanctions. (Doc. No. 25).

{¶4} Foreman filed her notice of appeal on January 31, 2019. (Doc. No. 30). She raises two assignments of error for our review, which we will discuss together.

## Assignment of Error No. I

**The trial court erred in denying the Appellant's Ohio Crim. R. 29 Motion to Dismiss because the court lacked jurisdiction over the State's case-in-chief as there was insufficient evidence presented in the record that Appellant ingested, used, controlled, or otherwise possessed Cocaine- either actually or constructively – in Seneca County, Ohio in violation of R.C.§2925.11(A)(1)(c) [sic].[1]**

## Assignment of Error No. II

**The evidence was insufficient as a matter of law, or alternatively the trial court ruled against the manifest weight of the evidence in finding that Appellant unlawfully possessed cocaine in violation of R.C.§2925.11(A)(1)(c) [sic] because there was no evidence presented in the record that Appellant ingested, used, controlled, or other wised possessed – either actually or constructively – in Seneca Count, Ohio and thus the Court lacked jurisdiction over the matter.**

{¶5} In her assignments of error, Foreman argues that her possession-of-cocaine conviction is based on insufficient evidence and is against the manifest weight of the evidence. In particular, she contends that the State failed to produce sufficient evidence to establish Seneca County as the proper venue, and therefore, the trial court erred by denying her Crim.R. 29 motion for acquittal. Foreman also argues that the evidence presented at trial weighs against the conclusion that she knowingly possessed cocaine in Seneca County.

---

[1] R.C. 2925.11(A)(1)(c) does not exist.

*Standard of Review*

**{¶6}** Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Thus, we address each legal concept individually.

**{¶7}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4. *See State v. Armengau*, 10th Dist. Franklin No. 18AP-276, 2019-Ohio-1010, ¶ 14 ("Because a Crim.R. 29 motion questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.'"), quoting *State v. Hernandez*, 10th Dist. Franklin No. 09AP-125, 2009-Ohio-5128, ¶ 6, and citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37 and *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 16; *State v. Lightner*, 3d Dist. Hardin No. 6-08-11, 2009-Ohio-544, ¶ 37, citing *State v. Carter*, 72 Ohio St.3d 545, 553 (1995). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶8} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v.*

Case No. 13-19-01

*Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Analysis*

{¶9} Foreman was convicted of possession of cocaine in violation of R.C. 2925.11, which provides, in its relevant part, "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.11(A) (Sept. 14, 2016) (current version at R.C. 2925.11(A) (Mar. 22, 2019).

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶10} "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K) (Sept. 29, 2017) (current version at R.C. 2925.01(K) (Oct. 17, 2019). "The issue of whether a person charged with drug possession knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'" *State v. Brooks*, 3d Dist. Hancock

-6-

No. 5-11-11, 2012-Ohio-5235, ¶ 45, quoting *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998).

{¶11} At trial, the State presented the testimony of Dr. Christian Meade ("Dr. Meade"), a general pediatrician at Tiffin Mercy Hospital, who treated J.B. after his birth. (*Id.* at 10). Dr. Meade identified State's Exhibit 1 as a copy of J.B.'s toxicology-screening results. (*Id.* at 14); (Doc. No. 1). Dr. Meade testified that the results of J.B.'s toxicology-screening reflect that (as relevant to this case) cocaine was discovered in J.B.'s umbilical cord, urine, and meconium. (*Id.* at 15-16). Dr. Meade further testified that the "[m]econium is the * * * first stool that a newborn passes. It's * * * retained by the fetus and accumulates substances for * * * several months, usually the second or third trimester, so it's more or less reflective of what the baby has been exposed to in the second or third trimester." (*Id.* at 16). Dr. Meade clarified that a fetus accumulates the substances "[t]hrough the placenta from the mother" and testified State's Exhibit 1 further reflects that "[d]etection of drugs in umbilical cord tissue is intended to reflect maternal drug use during pregnancy." (*Id.*); (State's Ex. 1).

{¶12} Next, Megen Steyer ("Steyer"), a protective-services caseworker for Seneca County Job and Family Services, testified that she initiated an investigation after she was notified that J.B. was "born with illegal substances in [his] system." (*Id.* at 20). As part of her investigation, Steyer interviewed Foreman during the time

that she was a patient at the hospital after giving birth to J.B. (*Id.* at 22). According to Steyer, Foreman reported the following: (1) "that she used cocaine 6 to 12 times throughout her pregnancy; (2) "that she used every two to three weeks during her pregnancy"; (3) "that she used a week and a half to two weeks" prior to J.B.'s birth; (4) "that her fiancé did not know that she was using the cocaine as she would use it while he was at work"; (5) "that she never used it in front of her children" and (6) "that she did not use it in her home in Green Springs." (*Id.* at 22-23). Through her investigation, Steyer learned that Foreman resided in Green Springs, Seneca County, Ohio with her fiancé, Matthew Bucklew ("Bucklew"). (*Id.* at 21-25). Bucklew's "drug screen was positive for cocaine and THC"; however, Foreman refused a drug test from Steyer. (*Id.* at 23-24).

{¶13} We first review the sufficiency of the evidence supporting Foreman's possession-of-cocaine conviction. *State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014 Ohio-1788, ¶ 68, citing *State v. Wimmer*, 3d Dist. Marion No. 9-98-46, 1999 WL 355190, *1 (Mar. 26, 1999). Because it is Foreman's only argument on appeal, we review the sufficiency of the evidence supporting only whether the State produced sufficient evidence that she knowingly possessed cocaine in Seneca County.

{¶14} "'Venue commonly refers to the appropriate place of trial for a criminal prosecution within a state.'" *State v. Potee*, 12th Dist. Clermont No.

CA2016-06-045, 2017-Ohio-2926, ¶ 22, quoting *State v. Stone*, 12th Dist. Warren No. CA2007-11-132, 2008-Ohio-5671, ¶ 16, citing *State v. Meridy*, 12th Dist. Clermont No. CA2003-11-091, 2005-Ohio-241, ¶ 12. Under R.C. 2901.12(A), venue is generally placed in the territory in which an offense is committed. *See State v. Brentlinger*, 3d Dist. Allen No. 1-16-23, 2017-Ohio-2588, ¶ 56.

{¶15} "Although venue is not a material element of any criminal offense, it must nevertheless be proven at trial beyond a reasonable doubt, unless waived." *State v. Patterson*, 3d Dist. Hancock No. 5-11-15, 2012-Ohio-2839, ¶ 73, citing *State v. Draggo*, 65 Ohio St.2d 88, 90 (1981). *See also* Ohio Constitution, Article 1, Section 10. "'[V]enue need not be proved in express terms so long as it is established by all the facts and circumstances in the case.'" *Patterson* at ¶ 73, quoting *State v. Lee*, 3d Dist. Union No. 14-06-18, 2006-Ohio-6091, ¶ 14, citing *State v. Headley*, 6 Ohio St.3d 475, 477 (1983), and citing *State v. Connell*, 6th Dist. Huron No. H-03-026, 2005-Ohio-3202, ¶ 14.

{¶16} Viewing the evidence in a light most favorable to the prosecution, we conclude that the State presented sufficient evidence that Foreman knowingly possessed cocaine in Seneca County. A rational trier of fact could have found beyond a reasonable doubt that Foreman possessed the cocaine discovered in J.B.'s umbilical cord, urine, and meconium, which were collected after his birth at Tiffin Mercy Hospital on March 15, 2018. *See State v. Harris*, 178 N.C.App. 723, 727,

632 S.E.2d 534 (2006) (holding that a "positive urine screen gives rise to the inference that defendant ingested cocaine"). Importantly, our sister appellate districts have concluded that it is of no consequence whether the controlled substance is discovered in a defendant's pocket or in any cellular matter expelled by his or her body. *See State v. Scott*, 8th Dist. Cuyahoga No. 63234, 1994 WL 173716, *3 (May 5, 1994) ("'Whether that cocaine was in appellant's pocket or in his urine is of no effect.'"), quoting *State v. Shrimplin*, 5th Dist. Knox No. 90-CA-32, 1991 WL 42504, *2 (Mar. 25, 1991). *See also State v. McGowan*, 8th Dist. Cuyahoga No. 63491, 1993 WL 311372, *2 (Aug. 12, 1993) ("The fact that the State did not find cocaine 'on' Appellant's person, does not negate the fact that the State found high levels of cocaine metabolites 'in' his person."); *State v. Napper*, 3d Dist. Marion No. 9-91-11, 1991 WL 256521, *3 (Nov. 27, 1991); *State v. Moyar*, 3d Dist. Auglaize No. 2-06-10, 2006-Ohio-5974, ¶ 5, 17. *But see Harris* at 726 (holding "that a positive urine test, without more, does not satisfy the intent or the knowledge requirement inherent in our statutory definition of possession"). Thus, we conclude that the State presented sufficient evidence that Foreman possessed cocaine in Seneca County.

{¶17} Moreover, the State presented sufficient evidence that Foreman *knowingly* possessed cocaine in Seneca County. Indeed, Steyer testified that Foreman *admitted* that she used cocaine 6-to-12 times or every two-to-three weeks

during her pregnancy and that she last used cocaine one-and-a-half-to-two weeks prior to J.B.'s birth. Consequently, a reasonable trier of fact could have found beyond a reasonable doubt that Foreman *knowingly* possessed the cocaine discovered in the umbilical cord and J.B.'s urine and meconium collected upon J.B.'s birth at Tiffin Mercy Hospital on March 15, 2018. *See Harris* at 727 (concluding that the State presented sufficient evidence that Harris knowingly possessed cocaine because "the positive urine screen gives rise to the inference that defendant ingested cocaine, and [a witness's] testimony that she saw defendant snort cocaine provides corroborating evidence that defendant exercised the power and intent to control the substance's disposition or use, and that he was aware of its presence"); *Napper* at *3 (concluding that "the testimony of Ricky Young, the availability of Appellant, the cocaine and paraphernalia in her residence, and the analysis of her urine along with the testimony regarding the time that cocaine metabolites remain in the urine * * * amounted to sufficient evidence before the jury from which it could reasonably infer beyond a reasonable doubt that *at least one element* of the offense occurred in Marion County"); *Moyar* at ¶ 14 (concluding that Moyar's possession convictions were based on sufficient evidence after controlled substances were discovered his blood and urine because "the 'when, where, and how' of ingestion is not required in order for the jury to find that he possessed cocaine and heroin beyond a reasonable doubt" when there is additional

circumstantial evidence presented demonstrating that Moyer knowingly possessed the substances).

{¶18} For these reasons, we conclude that the State presented sufficient evidence that Foreman knowingly possessed cocaine in Seneca County and the trial court did not err by denying her Crim.R. 29 motion for acquittal.

{¶19} Having concluded that the State presented sufficient evidence that Foreman knowingly possessed cocaine in Seneca County, we next address Foreman's argument that her conviction is against the manifest weight of the evidence. *Velez,* 2014-Ohio-1788, at ¶ 76. Foreman contends that Steyer's testimony that Foreman's "fiancé did not know that she was using the cocaine as she would use it while he was at work," "that she never used it in front of her children," and "that she did not use it in her home in Green Springs" weighs against the conclusion that she knowingly possessed cocaine in Seneca County. (Nov. 26, 2018 Tr. at 23). However, based on our conclusion relative to Foreman's sufficiency-of-the-evidence arguments, the trier of fact did not clearly lose its way and create such a manifest miscarriage of justice that Foreman's possession-of-cocaine conviction must be reversed and a new trial ordered. In other words, the evidence that Foreman contends weighs against the conclusion that she knowingly possessed cocaine in Seneca County does not negate her admission to using cocaine coupled with the evidence of the cocaine that was discovered in the umbilical cord

and J.B.'s urine and meconium collected upon J.B.'s birth at Tiffin Mercy Hospital on March 15, 2018. Therefore, the evidence does not weigh against the conclusion that Foreman knowingly possessed cocaine in Seneca County and her possession-of-cocaine conviction is not against the manifest weight of the evidence.

{¶20} Foreman's assignments of error are overruled.

{¶21} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, J., concurs.**

**/jlr**

**WILLAMOWSKI, J., Dissenting.**

{¶22} I respectfully dissent from the majority opinion because I disagree with the majority's conclusion that the State proved that venue was proper in Seneca County let alone proving it beyond a reasonable doubt. The majority concludes that venue is proper under R.C. 2901.12(A) and R.C. 2901.12(G). For the following reasons, I would find that the State has not presented evidence that establishes venue under either of these provisions.

{¶23} R.C. 2901.12(A) states that venue lies "in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A). In order to establish venue under this provision, the State had to prove, beyond a reasonable doubt, that Foreman committed an element of the offense within the borders of Seneca County. R.C. 2901.12(A). Since Foreman admitted to ingesting cocaine, I would agree that it is indisputable that Foreman "knowingly obtain[ed], possess[ed], [and] use[d] a controlled substance" at some point and in some place. R.C. 2925.11(A). However, the evidence presented at trial does not establish that Foreman obtained, possessed, or used cocaine *within* the limits of Seneca County as would be required to prove venue under R.C. 2901.12(A).

{¶24} To affirm this conviction, the majority insists that the mere presence of traces of a controlled substance in a person's system constitutes possession within the meaning of R.C. 2925.11(A). For this reason, the majority holds that Foreman committed an element of the offense within the jurisdiction in which she was tried because residual traces of cocaine metabolites lingered in her "cellular matter" at the time she was giving birth in the hospital in Seneca County. Thus, based on this definition of possession, the majority concludes that the State established venue under R.C. 2901.12(A). However, this definition of possession is extremely problematic.

{¶25} The majority's understanding of "possession" comes from an unreported decision crafted by the Fifth District. *State v. Shrimplin*, 5th Dist. Knox No. 90-CA-32, 1991 WL 42504, *2. In *Shrimplin*, a urinalysis exam revealed that the defendant had cocaine in his system. *Id*. at *1. The defendant was then convicted of violating R.C. 2925.11(A). *Id*. at *2. On appeal, the defendant argued that the State had not established venue because the prosecution only proved that cocaine was present in his system in the county where he was tried. *Id*. at *2. The Fifth District issued a conclusory holding, saying "[w]hether that cocaine was in appellant's pocket or in his urine is of no effect." *Id*.

{¶26} After examining this decision, I find it is important to note that, in reaching this position, the Fifth District did not bother to examine the statutory definition of "possession" in R.C. 2925.01(K), consider the legal or plain meaning of this word, cite any precedent from any jurisdiction, or explore the implications of this expansive view of possession. *Id*. This decision merely issues a conclusory assertion. *Id*. The majority stresses the importance of following the precedent of our sister districts. However, in this matter, the question is not whether we should follow the precedent of our sister districts. The question is which sister district we should choose to follow. Instead of applying the Fifth District's injudicious precedent, I would follow the Fourth District's cogent definition of possession as

set forth in its decision in *Logan v. Cox*, 89 Ohio App.3d 349, 624 N.E.2d 751 (4th Dist. 1993).

{¶27} In *Logan*, the defendant was charged with underage possession of alcohol. *Id*. at 350. The prosecution presented evidence at trial that indicated that the police found the defendant in a state of intoxication. *Id*. at 351. However, the defendant argued that

> **the presence of alcohol in one's system does not constitute possession of that alcohol. [He] assert[ed] that once he had consumed the alcohol, he no longer had possession or control of the alcoholic beverage.**

*Id*. at 352-353. Thus, he asserted that the State did not demonstrate that he possessed the alcohol in the county in which he was tried. *Id*. at 353.

{¶28} After examining the evidence in the record, the Fourth District very logically determined

> **that the presence of alcohol in appellant's system is circumstantial evidence of *prior* possession. * * * However, this evidence is not enough, without additional corroborating evidence, to prove prior possession beyond a reasonable doubt *within the jurisdiction where the charges were brought*. In the case sub judice, there was no such additional corroborating evidence adduced. The evidence demonstrated only that appellant's breath had an odor of alcohol and that the gaze nystagmus and intoxilyzer tests revealed that appellant was under the influence of alcohol. There was no other evidence adduced which would tend to show that appellant possessed the alcohol *at a prior time in Hocking County*.**

(Citations omitted.) (Emphasis added.) *Id*. at 354.[2] For the following reasons, I would apply the rationale of this Fourth District precedent.

{¶29} The Ohio Revised Code provides a definition for the word "possession." R.C. 2925.01(K). Under R.C. 2925.01(K), "possession" is "having *control* over a thing or substance." (Emphasis added.) R.C. 2925.01(K). Given this definition, the key question, in reaching a decision in the case before this Court, is whether a person loses control over a regulated substance when he or she ingests that substance. In deciding this question, a number of other jurisdictions have sensibly drawn a distinction between regulated substances that have been concealed within the body and regulated substances that have been assimilated into the body. *See Logan, supra*, at 353-354, citing *State v. Flinchpaugh*, 232 Kan. 831, 659 P.2d 208 (Kan. 1983); *State v. Lewis*, 394 N.W.2d 212 (Minn. App. 1986); *People v. Spann*, 187 Cal.App.3d 400, 232 Cal.Rptr. 31 (Cal. App. 1986). *See also State v. Rudd*, 70 Wash. App. 871, 872-873, 856 P.2d 699, 700-701 (Wash. App. 1993).

---

[2] In *Logan*, the appellant challenged his convictions on the grounds that (1) his convictions were not supported by sufficient evidence and (2) that the State failed to establish venue. *Logan, supra*, at 350-351. He raised these challenges in separate assignments of error. *Id*. The Fourth District only ruled on the assignment of error that addressed his sufficiency of the evidence arguments. *Id*. at 352, 355. However, based on the language in its analysis, the Fourth District found that the defendant's conviction was not supported by sufficient evidence *because* the State did not establish venue. *Id*. at 354. The Fourth District expressly states that the presence of alcohol in the defendant's system was not actual possession of alcohol but circumstantial evidence of previously possessing alcohol. *Id*. at 354. The Fourth District then determined that the State did not provide any evidence that the alleged crime was committed in Hocking County. *Id*. at 354. Thus, the court did not conclude that the defendant's conviction was based on insufficient evidence because the State failed to prove the material elements of the charged offense. *Id*. Rather, the court concluded that the defendant's conviction was not supported by sufficient evidence because the State failed to establish *where* the defendant possessed alcohol—because the State failed to establish venue. *Id*.

{¶30} If a person ingests a regulated substance in a manner that assimilates it into the body, then "[t]he ability to control the drug is beyond human capabilities." *Logan, supra*, at 353, 624 N.E.2d 751, 754 (4th Dist. 1994), quoting *Flinchpaugh* at 834. *See Franklin v. State*, 8 Md.App. 134, 258 A.2d 767 (Md. App. 1969); *State v. Thronsen*, 809 P.2d 941 (Alaska App. 1991). Once a drug has been assimilated into the body, a person is rendered incapable of retrieving or controlling that regulated substance for further use. *See State v. Hornaday*, 105 Wash.2d 120, 713 P.2d 71, 76 (Wash. 1986), *superseded by statute on other grounds*; *State v. Vorm*, 570 N.E.2d 109 (Ind. App. 1991). Thus, a person no longer controls nor possesses a drug that has been assimilated into the body. *In re R.L.H.*, 327 Mont. 520, 116 P.3d 791, ¶ 23 (Mont. 2005); *Evans v. State*, 24 Ala.App. 196, 197, 132 So. 601, 601 (Ala. App. 1931) (holding that "[p]ossession of whisky [sic] within the meaning of the prohibition law contemplates a control over the whisky, whereas when the whisky is in the man the whisky controls the man.").

{¶31} However, "in a concealment case, the defendant ingests or otherwise inserts into the body a balloon, baggie, or similar container filled with an illegal substance. Rather than being assimilated into the bloodstream, the substance remains concealed in the body until retrieved or expelled." *Rudd, supra*, at 873. Thus, if a person ingests a regulated substance in a manner that conceals it within the body, then control of that regulated substance is not put beyond human

capabilities. *Rudd, supra*, at 873; *See Spann, supra*, at 33. A regulated substance that is merely concealed within the body is subject to retrieval, subsequent control, and further use. *Rudd, supra*, at 873.

{¶32} This definition also comports with the plain and legal meanings of the word "possession." *See Logan, supra*, at 353, quoting The American Heritage Dictionary (2 College Ed. 1985) (the word "possess" is defined as "to gain or exert influence or control over."); Black's Law Dictionary (6th Ed. 1991) (the word "possess" is defined "under narcotic drug laws [as] actual control, care and management of the drug. Defendant 'possesses' [a] controlled substance when defendant knows of substance's presence, substance is immediately accessible, and defendant exercises 'dominion or control' over substance."). *See People v. Rutledge,* 250 Mich. App. 1, 6-7, 645 N.W.2d 333, 337-338 (Mich. App. 2002); *Com. v. Pellegrini*, 414 Mass. 402, 608 N.E.2d 717 (Mass. 1993), fn. 7; *Lewis, supra*, at 217.

{¶33} Thus, while the Fifth District issued a slapdash, conclusory statement without a supporting analysis in *Shrimplin*, the vast majority of jurisdictions that have engaged in a comprehensive legal analysis of the definition of possession in similar contexts have come to a conclusion that is fully consistent with this dissent. *Logan, supra*; *Flinchpaugh, supra*; *Lewis, supra*; *Spann, supra*; *Rudd, supra*; *Franklin, supra*; *Thronsen, supra*; *Hornaday, supra*; *Vorm, supra*; *Evans, supra*;

*Rutledge, supra*; *Pellegrini, supra*; *State v. Griffin*, 220 Wis.2d 371, 584 N.W.2d 127 (1998). *Compare Green v. State*, 260 Ga. 625, 398 S.E.2d 360 (1990).

{¶34} The majority notes that not all of these precedents directly address the issue of venue. However, the case before this Court turns on the definition of possession. There is no venue in Seneca County under R.C. 2901.12(A) unless "possession" includes a controlled substance that has already been assimilated into a person's body. A correct definition of possession is, therefore, essential to rendering a correct decision on the issue of whether venue exists under R.C. 2901.12(A). These precedents are relevant because they offer well-reasoned insights into the accurate definition of possession. The logic of these precedents does not support a finding of venue under R.C. 2901.12(A) in the case before this Court.

{¶35} Unlike the case squarely before us, most of the precedents that the majority relies upon in order to find venue under R.C. 2901.12(A) do not rely solely on the mere presence of a controlled substance in a person's system to establish venue.[3] *See State v. Napper*, 3d Dist. Marion No. 9-91-11, 1991 WL 256521, *3 (Nov. 27, 1991) (wherein the police found cocaine and drug paraphernalia at the

---

[3] The majority cites these cases to support this conclusion: "the State presented circumstantial evidence that Foreman possessed cocaine. That is * * * Foreman possessed the cocaine discovered in the umbilical cord and J.B.'s urine and meconium * * *." I interpret this statement to mean that the tests conducted on Foreman's baby were circumstantial evidence that Foreman had cocaine metabolites in her system when she was in the hospital and that Foreman was, therefore, in possession of cocaine at that time. In context, I do not read this statement to mean that the circumstantial evidence establishes that Foreman had previously possessed cocaine.

defendant's residence); *State v. Moyer*, 3d Dist Auglaize, 2006-Ohio-5974 (wherein the police found a rock of crack cocaine, crack pipes, and marijuana seeds in the defendant's residence); *State v. Burton*, 9th Dist. Medina No. 2495-M, 1996 WL 170353, *3 (Apr. 10, 1996) (wherein the defendant sold cocaine to a person working with an undercover police officer). These precedents are easily distinguishable from the case before this Court because no drugs or drug paraphernalia were found in Foreman's constructive possession or in her actual possession in Seneca County.

{¶36} The majority cites two other unreported decisions that merit further discussion. *See State v. Scott*, 8th Dist. Cuyahoga No. 63234, 1994 WL 173716, *3; *State v. McGowan*, 8th Dist. Cuyahoga No. 63491, 1993 WL 311372, *3, (Aug. 12, 1993). In *Scott*, the defendant was charged with violating R.C. 2925.11(A) after his urine sample tested positive for the presence of cocaine. *Id*. at *1. At trial, a toxicologist testified that a timeframe for the ingestion of the controlled substance could be established based upon the level of cocaine metabolites found in Scott's system. *Id*. at *3. The State introduced evidence that established Scott was working in Cuyahoga County during the timeframe of the ingestion. *Id*. at *3.

{¶37} In reaching this conclusion, however, the Eighth District did not examine the meaning of the word "possession" or consider the broader implications of the Fifth District's conclusory holding in *Shrimplin*. *Id*. Nonetheless, I ultimately find *Scott's* reliance on *Shrimplin* to be unfortunate because such reliance was

unnecessary. In *Scott*, the State provided evidence, beyond the mere presence of cocaine metabolites in Scott's system, that established that the defendant used cocaine within the county where he was tried. In the case before this Court, however, no such additional evidence was provided to establish that Foreman was in Seneca County during the specific timeframe in which she admitted to ingesting cocaine.

{¶38} In *McGowan*, the defendant was involved in a car accident in Cleveland at 8:00 P.M. *McGowan, supra*, at *1. A subsequent urine test revealed the presence of cocaine metabolites in McGowan's system. *Id*. On appeal, *McGowan* challenged his conviction, arguing (1) that his conviction was erroneous as a matter of law because it was based "upon an unquantifiable and uningestible [sic] amount of cocaine" and (2) that the State did not prove venue. *Id*. at *2. The majority quotes the following portion of *McGowan*: "[t]he fact that the State did not find cocaine 'on' Appellant's person, does not negate the fact that the State found high levels of cocaine metabolites 'in' his person." *Id*. at *2. However, a careful and complete reading of *McGowan* reveals that this statement does not support the majority's definition of possession or its decision on the issue of venue under R.C. 2901.12(A).

{¶39} First, the Eighth District made the statement about cocaine being "'in' [McGowan's] person" in response to an argument McGowan made in his second

assignment of error and not in response to his venue challenge. *Id*. at *2. In this argument, McGowan asserted that his conviction was based on insufficient evidence because the State "failed to find any quantifiable or useable amount of cocaine *on his person*." (Emphasis added.) *Id*. The Eighth District held that R.C. 2925.11 "does not establish any minimum prohibited amount of a controlled substance." *Id*. at *2. The court then determined that the State was not required to find cocaine *on his person* to establish that he had used or possessed cocaine. *Id*. Thus, the Eighth District did not hold that the existence of cocaine metabolites in his system was itself possession within the meaning of R.C. 2925.11(A). The Eighth District treated the high levels of cocaine in his system as evidence of previously using cocaine. I do not disagree with this, nor is that in dispute in the case before us.

{¶40} In the case before this Court, the tests conducted on Foreman's infant child are clearly evidence that she had previously used cocaine at some point. Even more conclusive than this is her admission that she had previously used cocaine. This evidence establishes that she previously used cocaine for the purposes of establishing prior possession in violation of R.C. 2925.11(A). This is not in dispute. As in *McGowan*, law enforcement officers did not have to find cocaine *on* her person in order to prove that she had previously used or possessed cocaine. However, for the purposes of establishing venue, this evidence does not in any way establish *where* she previously used or possessed the cocaine that she ingested.

Thus, while the cocaine metabolites in her system and her admission are evidence of her prior use or possession of cocaine, this evidence simply does not establish venue.

{¶41} Second, *McGowan* does not define or address the issue of possession. In response to McGowan's argument, the Eight District stated that "R.C. 2925.11(A) prohibits not only 'possession' but 'use.'" *Id*. The Eighth District did not find that the existence of high levels of cocaine metabolites in McGowan's system constituted the ongoing possession of cocaine. *Id*. Rather, the court held that these tests were evidence of prior use and not proof of possession. *Id*. In the case before this Court, the issue is not whether Foreman used cocaine in Seneca County. The issue is whether she possessed cocaine in Seneca County by virtue of having cocaine metabolites present in her system in the hospital in Seneca County. Thus, *McGowan* does not provide this Court with guidance in answering the primary question in the case before us.

{¶42} Third, as to the issue of venue, the Eight District, in *McGowan*, found venue under R.C. 2901.12(G) and not R.C. 2901.12(A). On appeal, McGowan alleged that he ingested cocaine in Summit County and then argued that venue was, therefore, not proper in Cuyahoga County. The Eighth District noted that a forensic toxicologist testified at trial that the urine samples indicated that McGowan had ingested cocaine "within two to four hours" before the test was administered. *Id*. at

*2. The test was administered at 9:50 P.M., indicating that McGowan ingested cocaine in between 5:50 P.M. and 7:50 P.M. *Id.* The record indicated that McGowan was in an accident in the northern part of Cuyahoga County at 8:00 P.M. Thus, the State produced evidence as to venue beyond the mere presence of cocaine in McGowan's system.

{¶43} Based on the time of the accident and the testimony of the toxicologist, the Eight District held that the State presented some evidence that McGowan used cocaine in Cuyahoga County. Further, the court noted that McGowan's assertion that he used cocaine in Summit County was "self-serving." *Id.* Since the evidence at trial established that McGowan used cocaine either in Summit County or in Cuyahoga County, the Eighth District held that McGowan could have been tried in Summit County or Cuyahoga County pursuant to R.C. 2901.12(G). The Eighth District distinctly did not find venue under R.C. 2901.12(A) on the basis of the mere presence of cocaine in McGowan's system. By contrast, in the case before this Court, there is no evidence of any kind that establishes *where* Foreman possessed cocaine. To establish venue under R.C. 2901.12(A), the State had to establish that Foreman committed an element of the charged offense in jurisdiction where she was tried.

{¶44} I also believe that the broader implications of the majority's vast definition of "possession" are deeply problematic and merit exploration. Under the

majority's opinion, the mere presence of a regulated substance in a person's system, even after it has been assimilated into that person's body, constitutes possession. Following the logic of the majority, once a person has ingested a controlled substance in a manner that assimilates it into his body, he is continuously in possession of this controlled substance and is engaged in an ongoing violation of R.C. 2925.11(A) as long as any trace of it lingers in his system. Thus, an issue that I have with the majority's holding is that, if assimilation of a regulated substance into a person's body does not terminate possession, then the assimilation of a regulated substance into a person's body is arguably a process by which possession is transformed from an act and into a status.

{¶45} Consider the implications of the majority's definition of possession under R.C. 2925.11(A) as states across the country legalize marijuana. Under the majority's definition, a resident of Ohio who vacations in Michigan and legally ingests marijuana in that jurisdiction would, immediately upon returning to Ohio, be guilty of violating R.C. 2925.11(A) as long as any trace of tetrahydrocannabinol ("THC") lingered in her system. This resident, upon her return to Ohio, is not committing a voluntary act in this jurisdiction that is proscribed by R.C. 2925.11(A). At this point, her "possession" of marijuana is involuntary. She cannot retrieve, control, or rid herself of the traces of marijuana that linger in her hair, blood, or cellular matter.

{¶46} Further, in this scenario, this person's conduct would have been completely in compliance with the law of the jurisdiction where those actions were undertaken. As an example, it is lawful to obtain, use, and possess marijuana beyond our state border in Michigan. However, under the majority's logic, a simple blood or urine test that reveals the mere presence of THC in this individual's system would be sufficient to sustain a conviction for violating R.C. 2925.11(A) even though this person has not committed an unlawful act in either Ohio or Michigan. What then is this person ultimately receiving a conviction for? In essence, this individual would be in violation of Ohio law not because she committed a voluntary, illegal act within our jurisdiction but because she legally attained the status of drug user while she was in Michigan.

{¶47} Under the Fourth District's definition of possession, as stated in *Logan*, R.C. 2901.12(A) would require the State to prove that the voluntary act of using, obtaining, or possessing marijuana was unlawful as that act was being committed. *See Logan, supra.* In the process of proving venue, the State establishes which jurisdiction's laws govern the alleged act in question by demonstrating where the person had control over the scheduled drug. The voluntary acts of lawfully obtaining, using, or possessing marijuana exclusively in Michigan are not a violation of Ohio Revised Code 2925.11(A).

Case No. 13-19-01

**{¶48}** If the State does not have to establish where the defendant committed the voluntary acts of obtaining, using, or possessing a scheduled drug, then the State does not have to prove that R.C. 2925.11(A) was, in fact, violated in the process of obtaining a conviction for drug possession under R.C. 2925.11(A). Instead, the State only has to establish that this Ohio resident was a drug user by introducing a test that reveals traces of a scheduled drug in her system. In this context, the proper definition of possession would require the State, in establishing venue under R.C. 2901.12(A), to prove that the defendant committed an unlawful act that violated Ohio law.

**{¶49}** The majority is not troubled by this hypothetical, stating that cocaine, the regulated substance at issue in the case before this Court, cannot "legally be ingested in another jurisdiction." Majority, *supra*. Thus, according to the majority, "there is no possibility that Foreman legally consumed the cocaine and is subsequently being prosecuted for her legal consumption of that substance." Majority, *supra*. However, consider the case of a drug addict who lives in Indiana and regularly uses cocaine in that state. This person has possessed drugs that are illegal in Indiana and has cocaine residue in his system as the result of his illegal activities in that state.

**{¶50}** If this person came into Ohio while sober and did not have any amount of cocaine on his person or in his vehicle, he would be, under the majority's

-28-

reasoning, guilty of possessing cocaine in violation of R.C. 2925.11(A) the moment he crossed the border solely because there was cocaine residue present in his system. What voluntary act has this person committed against the peace and dignity of the citizens of Ohio? In this situation, the voluntary acts of obtaining, using, and possessing cocaine were each conducted in Indiana and, therefore, Indiana law was likely violated, but not Ohio law. Ultimately, this individual in this example is in violation of Ohio law the moment he crosses the border not because he committed a voluntary, illegal act in our state but because he attained the status of drug addict through illegal acts in another state.

{¶51} In *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417 (1962), the Supreme Court of the United States found a California law that criminalized drug addiction to be unconstitutional.[4] In this decision, the Supreme Court recognized the broad powers of states to "regulate the narcotic drugs traffic within [their] borders * * *." *Id*. at 664. Pursuant to this power, "[a] State might impose criminal sanctions, for example, against the unauthorized manufacture, prescription, sale, purchase, or possession of narcotics within its borders." *Id*. at 664-665. However, the Supreme Court held that, under the California law in question, "a person [could] be continuously guilty of this offense, whether or not he has ever used or possessed

---

[4] This California law was ultimately struck down as unconstitutional because the Supreme Court found it violated the Eighth Amendment. *Robinson, supra*, at 667.

any narcotics within the State, and whether or not he has been guilty of any antisocial behavior there." *Id*. at 668.

{¶52} The Supreme Court ultimately "h[e]ld that a state law which imprisons a person thus afflicted [with the illness of drug addiction] as a criminal, even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there, inflicts a cruel and unusual punishment in violation of the Fourteenth Amendment." *Id*. at 667. *See also City of Akron v. Neal*, 9th Dist. Summit No. 11847, 1985 WL 10687, *1 (Apr. 17, 1985) (holding that, under Robinson, "the mere status of an individual as a drug addict cannot be made criminal" but that "the overt acts of an individual may constitute criminal behavior.").

{¶53} In the situation of the drug addict who visits from Indiana, the majority's overreaching definition of possession would have the same effect as the law at issue in *Robinson*. *Id*. at 660-661. Under the majority's position, the State may establish a violation of R.C. 2925.11(A) by introducing tests that reveal traces of a controlled substance in a defendant's system because the mere presence of a controlled substance in a person's body is, in and of itself, possession of a controlled substance within the meaning of R.C. 2925.11(A). However, in the case of the person visiting from Indiana, as in the case under consideration by this Court, the mere presence of a controlled substance in this person's system would, in fact, prove

-30-

nothing more than that this individual was a drug addict. The mere presence of cocaine in this person's system would not establish that he committed a voluntary, illegal act that violated Ohio law.

{¶54} In this regard, my reading of *Robinson* is an established and accepted interpretation. In dicta, the Second District of Illinois interpreted *Robinson* in a case where a pregnant woman gave birth to a baby. *People v. Chatman*, 297 Ill.App.3d 57, 696 N.E.2d 1159 (Ill. App. 1998).[5] Subsequent testing revealed the presence of cocaine in the baby's system. *Id*. The court wrote that

> **[a]ccording to the prosecutor's own representations, the *corpus delicti* was 'a blood test, with no other corroborating evidence.' This evidence could support a conviction only if the State could criminalize a person's mere status as a drug user without any proof that she committed an illegal act, such as possessing the cocaine, within the jurisdiction. This, however, is what *Robinson* [*v. California, supra*, at 370] * * * disallow[s].**
>
> **\* \* \***
>
> **As the State conceded at the trial level, it may not obtain convictions of cocaine possession merely by proving that defendant was a cocaine user or cocaine addict *while she was within the jurisdiction*. The State also conceded that its evidence to date—essentially, the test results—did not prove defendant possessed cocaine within the jurisdiction as the indictment charged. We agree with the parties and the trial court that this evidence would not support a conviction on any of the charges. It proves only that defendant 'possessed' cocaine in her bloodstream**

---

[5] In this case, the trial court dismissed the indictment against Chatman because the State could not establish evidence beyond the results of a drug test. *Chatman, supra*, at 58. The appellate court ultimately resolved this issue as a procedural matter by finding that the trial court improperly dismissed the indictment. *Id*. at 61. However, in the quoted portion of this decision, the appellate court found the reasoning of the trial court to be correct as to the substantive issue of whether the drug test results alone could establish that an illegal act occurred within the relevant jurisdiction. *Id*. at 60.

> **while she was present *in the jurisdiction*. Reading the statute to criminalize this form of 'possession' would run afoul of *Robinson* * * *.**

(Emphasis added.) *Id*. at 60.

**{¶55}** In interpreting R.C. 2925.11(A), we should define possession in a manner that limits the application of this provision to conduct rather than expanding it to include status. Such a definition accords with the plain meaning of the word "possession." If this provision is ambiguous, "[a] criminal statute is [to be] construed strictly so as to apply the statute only to conduct that is clearly proscribed." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 10. The majority, however, inaptly expands the definition of possession beyond its plain and legal meanings. Adopting this definition of possession has the unconstitutional effect of bringing statuses within the ambit of what is criminalized as "possession" under R.C. 2925.11(A). *See Robinson, supra,* at 667; *Powell v. State of Tex*., 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968); *Hazlett v. Martin Chevrolet, Inc*., 11th Dist. Trumbull No. 3475, 1985 WL 9938, *2 (July 12, 1985). The majority's interpretation would expand the reach of R.C. 2925.11(A) far beyond what, based on a plain reading of this provision, was the General Assembly's intent in passing this provision.

**{¶56}** Turning to the facts of the case before this Court, there is no question that Foreman is a drug user since she admitted to ingesting cocaine. While her

admissions clearly establish that Foreman had obtained, used, and possessed cocaine at some time and in some place, her admissions are not relevant for the purposes of establishing venue under R.C. 2901.12(A) because Foreman did not make any statement regarding where she committed this offense. The case for finding venue under R.C. 2901.12(A) exclusively rests on the mere presence of cocaine metabolites in Foreman's system being, in and of themselves, possession of a controlled substance in violation of R.C. 2925.11(A).

{¶57} However, the record indicates that the cocaine had been assimilated into Foreman's system long before she gave birth at a hospital in Seneca County. *See Jackson v. State*, 833 S.W.2d 220, 222-223 (Tex. App. 1992). The process of assimilation placed the cocaine beyond her ability to retrieve or control. Thus, Foreman, in the absence of any present or future ability to retrieve or control this illegal substance, was not in possession of cocaine as she gave birth in Seneca County. Since she was not in possession of cocaine at the time she gave birth, the State has not proved that she committed an element of the offense in Seneca County. Thus, I would hold that the State did not prove venue beyond a reasonable doubt under R.C. 2901.12(A).

{¶58} The majority also finds that the State established venue under R.C. 2901.12(G). Under this provision,

> **[w]hen it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more**

**jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions.**

R.C. 2901.12(G). However, the State produced no evidence at trial that establishes venue under this provision.

{¶59} R.C. 2901.12(G) does not exist to provide venue in situations in which there is absolutely no evidence as to where the act that constitutes the criminal offense occurred. Rather, this provision exists for situations in which the vicinity where a criminal act occurred is known and can be established but where the exact locus of the offense in relation to specific jurisdictional boundaries cannot be demonstrated precisely. The cases that the majority cites are consistent with this position. *State v. Perkins*, 3d Dist. Hancock No. 5-13-01, 2014-Ohio-752, ¶ 35; *State v. Stemm*, 3d Dist. Union No. 14-08-44, 2009-Ohio-1655, ¶ 25.

{¶60} In *Perkins*, a woman was taken from a bar in Hancock County to a field where she was raped. *Perkins* at ¶ 11. The defendant then drove the woman to the place where she lived in Hancock County. *Id*. at ¶ 14. She did not remember leaving the bar but testified that the drive from the field to her house was "a couple minutes." *Id*. at ¶ 14. The investigating officer testified at trial that there were several fields near to where the victim lived in Hancock County. *Id*. at ¶ 36. However, the investigating officer stated that he could not determine which precise field was the locus of the offense. *Id*.

{¶61} This Court found that the State was able to prove venue based upon these facts under R.C. 2901.12(G). *Id.* While the precise field could not be identified, the State provided evidence as to the specific vicinity of the offense. *Id.* The short travel time from the field to the victim's house indicated that the offense occurred within the vicinity of her house and, therefore, within the limits of Hancock County. *Id.* Further, the State demonstrated that there were other acts that were committed in Hancock County that facilitated the offense of rape. *Id.* The State presented evidence that tied this offense to a vicinity that included Hancock County. *Id.*

{¶62} Similarly, in *Stemm*, a woman went to a steakhouse in Marysville, Union County. *Stemm* at ¶ 4. Later that evening, she thought she was getting a ride home with the defendant but woke up in a living room with the defendant. *Id.* at ¶ 5. The defendant then raped her and drove her to her ex-boyfriend's house. *Id.* The victim testified that she was raped about twenty to thirty minutes away from Marysville. *Id.* Further, she testified that she read signs on the trip to her ex-boyfriend's house that said "State Route 31" and "Mechanicsburg." *Id.* at ¶ 5. The victim stated that the trip from the scene of the offense to her ex-boyfriend's house was roughly twenty minutes. *Id.* at ¶ 9.

{¶63} Based on the testimony at trial, this Court found that the State established that the offense happened within a twenty-minute radius of Marysville

and, therefore, venue existed under R.C. 2901.12(G). *Id.* Thus, even if the offense did not happen in Union County, the evidence established that the offense then necessarily happened in an adjacent county. This is the situation in which R.C. 2901.12(G) is applicable: the vicinity of the offense was established by the State, though the State could not determine the precise longitude and latitude within the State where the offense occurred.

{¶64} These precedents are distinguishable from the case before us because the State did not provide any evidence that establishes, beyond a reasonable doubt, that Foreman committed an offense in an identified vicinity that includes Ohio, let alone Seneca County. In this case, there is no evidence as to where this offense occurred. The State provided evidence that established that Foreman gave birth in a hospital in Seneca County. However, there is unequivocally no evidence that she had used, obtained, or possessed cocaine at that location. The State also provided evidence that established that Foreman lived in Green Springs, Seneca County. However, there is no evidence that she used, obtained, or possessed cocaine at her home. Her admissions state that she did not use cocaine at her home, in front of her children, or with the knowledge of her fiancé. Further, Foreman's statements do not admit that she possessed cocaine in her house in Green Springs.

{¶65} To find venue under R.C. 2901.12(G), the majority opinion quotes one of the State's witnesses who testified at trial that Foreman admitted the following:

> **(1) "that she used cocaine 6 to 12 times throughout her pregnancy"; (2) that she used every two to three weeks during her pregnancy"; (3) "that she used a week and a half to week prior" to J.B.'s birth; (4) "that her fiancé did *not* know that she was using the cocaine as she would use it while he was at work"; (5) "that she *never* used it in front of her children" and (6) "that she did *not* use it in her home in Green Springs."**

(Emphasis added.) Majority, *supra*, quoting Tr. 22-23. Based on this testimony, the majority concludes that "Foreman's * * * admission proves beyond a reasonable doubt that Foreman knowingly possessed cocaine 'in any of two or more jurisdictions.'" Majority, *supra*, quoting R.C. 2901.12(G).

{¶66} These admissions (1) establish that Foreman obtained, used, and possessed cocaine somewhere and (2) establish several places where Foreman did *not* use cocaine. However, these admissions do not establish where she did obtain, use, or possess cocaine. In order to find venue through these admissions, the majority would have to inappropriately assume that Foreman obtained, used, or possessed cocaine in the vicinity of her home and that this offense, therefore, occurred in Seneca County or a neighboring jurisdiction. There was simply no evidence at trial that indicates that Foreman committed this offense in the vicinity of her home.

{¶67} I would agree that the fact that Foreman lived in Seneca County establishes a possibility that she may have possessed cocaine in or around that jurisdiction, but the State did not have the burden of establishing that it may have

-37-

been purely possible that she possessed cocaine in the vicinity Seneca County. Under R.C. 2901.12(G), the State had the burden of proving venue beyond a reasonable doubt. The mere presence of Foreman's residence in Seneca County is not proof beyond a reasonable doubt that she committed an element of this offense in that vicinity.

{¶68} Beyond the presence of Foreman's residence in Seneca County, I do not see how her admissions involve R.C. 2901.12(G). These admissions do not identify a vicinity that is comprised of multiple jurisdictions in which Foreman possessed cocaine. What jurisdiction do these admissions implicate? These admissions do not provide evidence that tends to establish *a* single jurisdiction where an element of this offense may have occurred let alone "two or more jurisdictions" where this offense may have occurred. R.C. 2901.12(G). The State has not identified any vicinity in which Foreman committed the alleged offense.

{¶69} In the absence of some evidence that tends to establish a vicinity in which the offense occurred, the majority's position appears to be resting on the jumbled logic that, if the offense did not occur in Seneca County, it occurred in another jurisdiction—therefore, jurisdiction exists under R.C. 2901.12(G). However, the fact that a crime occurred somewhere does not mean that a defendant can be tried anywhere. Such an expansive reading of this provision would release the State from the responsibility of having to prove venue.

{¶70} In the end, the State did not provide any evidence that tends to establish that an element of this offense occurred in Seneca County or in any vicinity that includes Seneca County, never mind that it must be proven beyond a reasonable doubt.  For this reason, I respectfully dissent from the majority opinion as it affirms the decision of the trial court to deny Foreman's Crim.R. 29 motion.  I would reverse the judgment of the trial court on the grounds that the State did not prove venue beyond a reasonable doubt.