RENDERED: DECEMBER 3, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1901-MR

JEREMY BENTON                                              APPELLANT

|  | APPEAL FROM CAMPBELL CIRCUIT COURT |
| v. | HONORABLE JULIE REINHARDT WARD, JUDGE |
|  | ACTION NO. 19-CR-00298 |

COMMONWEALTH OF KENTUCKY                        APPELLEE

AND

NO. 2019-CA-1902-MR

RONALD J. HARTIG, JR.                                     APPELLANT

|  | APPEAL FROM CAMPBELL CIRCUIT COURT |
| v. | HONORABLE JULIE REINHARDT WARD, JUDGE |
|  | ACTION NO. 19-CR-00300 |

COMMONWEALTH OF KENTUCKY                        APPELLEE

AND

NO. 2020-CA-0015-MR

BILLY TURNER                                               APPELLANT

APPEAL FROM CAMPBELL CIRCUIT COURT
v.      HONORABLE JULIE REINHARDT WARD, JUDGE
ACTION NO. 19-CR-00296

COMMONWEALTH OF KENTUCKY                    APPELLEE

AND

NO. 2020-CA-0016-MR

ANDREW KLUG                                 APPELLANT

APPEAL FROM CAMPBELL CIRCUIT COURT
v.      HONORABLE JULIE REINHARDT WARD, JUDGE
ACTION NO. 19-CR-00305

COMMONWEALTH OF KENTUCKY                    APPELLEE

AND

NO. 2020-CA-0092-MR

JEFFREY GAMBLE                              APPELLANT

APPEAL FROM CAMPBELL CIRCUIT COURT
v.      HONORABLE JULIE REINHARDT WARD, JUDGE
ACTION NO. 19-CR-00289

COMMONWEALTH OF KENTUCKY                    APPELLEE

AND

-2-

NO. 2020-CA-0094-MR

CHRISTOPHER MCGOVNEY             APPELLANT

APPEAL FROM CAMPBELL CIRCUIT COURT
v.       HONORABLE JULIE REINHARDT WARD, JUDGE
ACTION NO. 19-CR-00287

COMMONWEALTH OF KENTUCKY            APPELLEE

AND

NO. 2020-CA-0162-MR

ROBERT YOUNG               APPELLANT

APPEAL FROM CAMPBELL CIRCUIT COURT
v.       HONORABLE JULIE REINHARDT WARD, JUDGE
ACTION NO. 19-CR-00304

COMMONWEALTH OF KENTUCKY            APPELLEE

AND

NO. 2020-CA-0237-MR

HAROLD MAGGARD, JR.            APPELLANT

APPEAL FROM CAMPBELL CIRCUIT COURT
v.       HONORABLE JULIE REINHARDT WARD, JUDGE
ACTION NO. 19-CR-00288

COMMONWEALTH OF KENTUCKY            APPELLEE

AND

NO. 2020-CA-0316-MR

JAMES RILEY                                                        APPELLANT

                    APPEAL FROM CAMPBELL CIRCUIT COURT
v.            HONORABLE JULIE REINHARDT WARD, JUDGE
                         ACTION NO. 19-CR-00297

COMMONWEALTH OF KENTUCKY                                APPELLEE

AND

NO. 2020-CA-0852-MR

CARVEL WALTERS                                                    APPELLANT

                    APPEAL FROM CAMPBELL CIRCUIT COURT
v.            HONORABLE JULIE REINHARDT WARD, JUDGE
                         ACTION NO. 19-CR-00301

COMMONWEALTH OF KENTUCKY                                APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  MAZE, TAYLOR, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Jeremy Benton, Ronald Hartig, Jr., Billy Turner,

Andrew Klug, Jeffrey Gamble, Christopher McGovney, Robert Young, Harold

Maggard, Jr., James Riley, and Carvel Walters appeal their convictions in the

Campbell Circuit Court, entered upon their conditional guilty pleas, to promoting

contraband in the first degree, Kentucky Revised Statutes (KRS) 520.050. Where appropriate, these convictions also caused appellants' sentences to be enhanced for being persistent felony offenders. Due to the commonality of all material issues of fact and issues of law, these appeals have been consolidated.

All ten of the appellants were inmates at the Campbell County Detention Center (jail) and each tested positive, via urine sample, for methamphetamine while they were incarcerated. Each of the inmates was convicted of promoting contraband in the first degree following a bench trial. In the trial, unrebutted testimony was offered for the allegation that, due to the date of the urine testing and the length of time each inmate had been in custody prior to testing, each of the inmates must have consumed or otherwise ingested methamphetamine while in custody at the jail. The only factual matters distinguishing the appellants regard their physical locations within the jail.

Three of the appellants (Maggard, McGovney, and Gamble) were housed in Cell 204. Seven of the appellants (Benton, Hartig, Klug, Riley, Turner, Walters, and Young) were housed within an area known as DS1.

Cell 204 held ten inmates. One inmate, Joshua Young, who is not a party to this appeal, admitted to bringing methamphetamine into the jail via his rectum and supplying it to unnamed cell mates. Surveillance video corroborated Young's statements to jail staff. However, staff could not positively identify the

persons in the video recording who appeared to be passing around unknown items on a bunk bed, or those appearing to snort an unknown substance. Urine samples were taken from all ten inmates in Cell 204 and McGovney, Gamble, and Maggard all tested positive.

DS1 held approximately seventy inmates. An anonymous tip led jail personnel to clear DS1, and in the process methamphetamine was recovered by jail staff from inmates Campbell and Hill, who are not appellants in this matter. A series of videos appeared to show exchanges, consistent with drug transfers, at Campbell's bunk. Again, neither the items exchanged, nor the identities of the inmates, could be discerned in the videos. Three inmates within DS1 were willing to identify fellow inmates who they believed used methamphetamine. Urine samples were taken from twenty DS1 inmates and eighteen of those twenty tested positive. Two of those eighteen had only recently been incarcerated so they were not charged with promoting contraband.

At trial, the director of pathology for the University of Kentucky testified that following consumption of methamphetamine, urine will test positive for both methamphetamine and amphetamine as the human body breaks methamphetamine down into amphetamine. Furthermore, urine can test positive for these substances for only three, to at most five, days following ingestion.

Therefore, only those inmates that had been inside the jail for more than five days were charged with possession of the drug while incarcerated.

Each of the appellants waived their right to a jury trial. The trial court conducted a bench trial for all appellants. At the close of the Commonwealth's proof, the appellants moved for directed verdicts of acquittal which were denied as explained within a written order of the court. The trial court treated the appellants' motion as a motion to dismiss under Kentucky Rules of Civil Procedure (CR) 41.02(2). Such denial is the subject of these appeals. The appellants thereafter entered conditional guilty pleas, pursuant to an agreement with the Commonwealth, to promoting contraband in the first degree (KRS 520.050) and were sentenced.

The appellants assert that the trial court erred by denying their motion for a directed verdict of acquittal insofar as the Commonwealth had failed to present sufficient and suitable evidence to sustain their convictions.

On appeal, "the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020). However, in circumstances where the trial is conducted without a jury, our Supreme Court has stated that "[t]he language of CR 41.02(2) makes clear the 'considerations of a trial court on a motion to dismiss in a

bench trial are quite different from those on a motion for directed verdict in a jury trial.' The trial court 'must weigh and evaluate the evidence' rather than, with regard to directed verdict, 'indulge every inference in the [Commonwealth's] favor.'" *R.S. v. Commonwealth*, 423 S.W.3d 178, 184 (Ky. 2014) (citations omitted).

On appellate review of a ruling on a defendant's CR 41.02 motion, a trial court's determination will only be overturned for an abuse of discretion. *Jaroszewski v. Flege*, 297 S.W.3d 24, 31 (Ky. 2009). An abuse of discretion will be found when the trial court's decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

The trial court conscientiously considered all the evidence submitted in this matter and while its conclusion, that it could infer that the appellants had knowingly and intentionally consumed methamphetamine while in custody, might not be viewed as an abuse of discretion, the problem herein is whether or not testing positive for methamphetamine, together with the circumstantial evidence presented, supported a conviction for possessing or obtaining the drug in violation of KRS 520.050. Therefore, the legal question squarely before this Court concerns resolving the appropriate definitions to be given to those statutory terms. As the relevant material facts in this matter are not disputed, we must first focus on a *de*

*novo* review of the trial court's legal conclusions with regard to the issue of at what point, or by what means, an inmate "possesses" or "obtains" contraband in violation of the statute.

KRS 520.050, Promoting contraband in the first degree, states:

(1) A person is guilty of promoting contraband in the first degree when:

      (a) He knowingly introduces dangerous contraband into a detention facility or a penitentiary; or

      (b) Being a person confined in a detention facility or a penitentiary, he knowingly makes, obtains, or possesses dangerous contraband.

The definition of dangerous contraband includes controlled substances. KRS 520.010(3). KRS Chapter 520 (escape and other offenses relating to custody) does not define "possesses" or "obtains" but this chapter is found within the Kentucky Penal Code (KRS Chapters 500 to 534) which defines "possession" as, "[t]o have actual physical possession or otherwise to exercise actual dominion or control over a tangible object." KRS 500.080(14). There is no statutory definition for "obtain" in Kentucky under our Penal Code. The trial court accepted the MERRIAM-WEBSTER ONLINE DICTIONARY definition of "obtain" as, "to gain or attain by planned action or effort." *Obtain*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/obtain (last visited Dec. 1, 2021). BLACK'S LAW DICTIONARY defines "obtain" as, "[t]o bring into one's own

possession; to procure, esp. through effort[.]" *Obtain*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Distinguishing between the two terms under the factual circumstances of this matter is meritless. This Court does not need to hypothecate on any circumstance wherein someone might possess an item without first obtaining it. Here, if it were believed that each of the appellants knowingly received and then ingested methamphetamine, they would have obtained the drug and for some, perhaps short, period of time possessed it before ingesting it. The issue for this Court however is whether or not such possession of methamphetime, evidenced only by a urine sample, constitutes the type of possession criminalized by the statute.

Kentucky caselaw has not discussed the specific standards for "possession" in a manner regarding consumption or usage since Prohibition. However, those precedents are quite clear that, as a matter of law, having a controlled substance in your body, in ingested form, is not possession.

The ninety-year-old opinion in *Nethercutt v. Commonwealth*, 241 Ky. 47, 43 S.W.2d 330 (1931), was the last of a series of Prohibition-era cases which were primarily concerned with the degree of possession necessary to evidence a defendant's intent to control or distribute liquor. The Court in *Nethercutt* was faced with a defendant who had been arrested while obviously intoxicated and

ruled that alcohol consumed, and otherwise already in an accused's stomach, did not constitute the unlawful possession of intoxicating liquor. The *Nethercutt* opinion relied upon *Skidmore v. Commonwealth*, 204 Ky. 451, 264 S.W. 1053 (1924), where three members of "a drinking party" testified that Skidmore did not "own" the liquor, but only had it in his hands for purposes of taking a drink as a guest of one of the people who had provided the alcohol. The *Skidmore* opinion itself relied upon *Sizemore v. Commonwealth*, 202 Ky. 273, 259 S.W. 337 (1924), wherein the Court held that the act of handling a bottle of whisky while taking a drink does not of itself constitute an unlawful possession within the meaning of the statute where the person handling the bottle returned the remainder without assuming any further control of the bottle or its contents. In *Brooks and Minton v. Commonwealth*, 206 Ky. 720, 268 S.W. 339 (1925), which relied upon *Skidmore* and *Sizemore*, our then highest Court explained that, "[the liquor's] momentary possession by another for the sole purpose of taking an offered drink is not a violation of the statute." *Id.* at 340.

Many of our sister states subsequently agreed with the rationale of *Nethercutt* and its forebears and applied the same rationale in the era of narcotics. In the Maryland opinion in *Franklin v. State*, 258 A.2d 767, 769 (Md.Ct.Spec.App. 1969), it was held that once a narcotic drug is injected into the vein, or swallowed orally, it is "apparent" that it is no longer in the individual's control for purposes of

-11-

unlawful possession. Maryland's Court of Appeals did however leave open the possibility that such evidence could be considered as one element of circumstantial evidence leading to a conviction:

> But evidence showing that a person has a prohibited narcotic drug within his system, while not per se constituting possession or control under Section 277, would tend to show circumstantially that he was in possession and/ or control of the drug prior to taking it.

*Id.*

In the Oregon opinion of *State v. Downes*, 572 P.2d 1328 (Or.Ct.App. 1977), *superseded by statute as stated in Employment Div. v. Smith*, 485 U.S. 660, 108 S.Ct. 1444, 99 L.Ed.2d 753 (1988), an officer witnessed the defendant injecting a "controlled substance" into the defendant's arm which was later identified as phencyclidine (PCP). Under those facts, the defendant was charged with not only use of the drug, but he was also charged with possession because the drug was in his bloodstream. The Oregon court held that under their statutory definition, the exercise of dominion or control over the property was necessary and that "obviously" after a drug is ingested or injected into the human body, the host body can no longer exercise dominion or control over it. *Id.* at 1330.

Likewise in the Kansas opinion in *State v. Flinchpaugh*, 659 P.2d 208 (Kan. 1983), the defendant was in a car wreck and consented to a blood sample at

the hospital. She tested positive for a metabolite of cocaine and was charged with possession. The Kansas Supreme Court determined that:

> Once a controlled substance is within a person's system, the power of the person to control, possess, use, dispose of, or cause harm is at an end. The drug is assimilated by the body. The ability to control the drug is beyond human capabilities. The essential element of control is absent. Evidence of a controlled substance after it is assimilated in a person's blood does not establish possession or control of that substance.

*Id.* at 211.

The Kansas court also noted that while a drug in a person's blood is circumstantial evidence tending to prove prior possession of the drug, it is not sufficient evidence in and of itself to establish guilt beyond a reasonable doubt. *Id.* at 212. Kansas then distinguished this case from those where there was additional evidence of "possession" rather than only a blood sample, such as admissions or surveillance showing the prior drug deal.

In *State v. Lewis*, 394 N.W.2d 212 (Minn.Ct.App. 1986), the Minnesota Court of Appeals cited to the *Nethercutt* (Ky.), *Flinchpaugh* (Kan.), and *Downes* (Or.) opinions, *supra*. The issue presented in *Lewis* was whether or not the presence of a trace of morphine within a person's system, without more evidence, is sufficient to sustain a conviction for unlawful possession of a controlled substance under the Minnesota law. The court found that the usual and ordinary meaning of the term "possession" did not include substances injected into

-13-

the body and assimilated into their system, explaining that after a controlled substance is within a person's system, the power to exercise dominion and control necessary to establish possession no longer existed. This opinion is notable in our present analysis for the determination that the particular terms of the Minnesota statute suggested the legislative intention to regulate the physical movement and/or transfer of controlled substances between different persons. Consequently, once a controlled substance is within a person's system the substance is beyond the scope of regulation contemplated by the statute. *Id.* at 217.

In the opinion in *State v. Hornaday*, 713 P.2d 71 (Wash. 1986), *superseded by statute as stated in State v. Ortega*, 177 Wash.2d 116 (Wash. 2013), the Washington Supreme Court stated that a defendant could not be convicted for possession of alcohol merely because he had alcohol within his system because "[o]nce it is within a person's system, the power of a person to control, possess, use or dispose of it is at an end." *Id.* at 75. Further, "[a] defendant 'possesses' a controlled substance when the defendant knows of the substance's presence, the substance is immediately accessible, and the defendant exercises 'dominion or control' over the substance." *Id.* at 74.

Turning back to the definition section of our Kentucky Penal Code, KRS 500.080(14), which currently defines the term "possession," became effective as of January 1, 1975, well after the discussion of the term "possess" as used in the

criminal context by our highest Court in *Nethercutt*. Therefore, as a matter of statutory construction, we must accept that the legislature was fully aware of what was, and was not, sufficient "possession" for purposes of subsequent criminal statutes. As stated in *Commonwealth v. Boarman*, 610 S.W.2d 922 (Ky.App. 1980), "[i]t is to be presumed . . . that the legislature is acquainted with the law, that it has knowledge of the state of the law on subjects on which it legislates, and that it is informed of previous legislation and the construction that previous legislation has received." *Id.* at 924.

A definition of "possesses" or "possession" which excludes the mere act of ingesting a controlled substance is further supported by the very title of this particular criminal statute which specifically concerns "[p]romoting contraband." KRS 520.050. The term "promote" is not defined within the Kentucky Penal Code. BLACK'S LAW DICTIONARY defines it as, "[t]o contribute to growth, enlargement, or prosperity of; to forward; to further; to encourage; to advance." *Promote*, BLACK'S LAW DICTIONARY (6th ed. 1990). By this definition, and by common usage, ingestion in and of itself does not serve to "promote" the item consumed. Consistent with the rules of statutory construction, we must address the intent of the General Assembly in enacting KRS 520.050. In the circumstances presented by this case, the title of this statute should be recognized as conveying the intent of the legislature as "the title of an enactment given to it by the

-15-

legislative body is a proper consideration in its construction[.]" *American Premier Ins. Co. v. McBride*, 159 S.W.3d 342, 349 (Ky.App. 2004). Clearly the legislative intention behind the promoting contraband statute was to regulate the physical movement of drugs and other dangerous items into our jails and prisons (KRS 520.050(1)(a)), and the transfer, storage, sales, and creation of such contraband within our jails and prisons (KRS 520.050(1)(b)). Given the widespread incidence of addiction in the Commonwealth, and the high rate of such within our correctional facilities, it should be recognized that the appellants are actually within that class of persons who were to be protected by the statute from those persons who either smuggle drugs into our correctional facilities or traffic them once inside.

Lastly, on the issue of statutory language, a significant point was made by the Washington Supreme Court in *Hornady* concerning construction of penal statutes:

> Even if we were to find the term "possession" to be ambiguous and the State's argument a plausible interpretation of the term, among others, fundamental fairness requires that a penal statute be literally and strictly construed in favor of the accused although a possible but strained interpretation in favor of the State might be found.

*Hornady*, 713 P.2d at 75-76.

Washington's deference to "fundamental fairness" in construing ambiguities in criminal statutes is closely mirrored by the rule of lenity. This rule was described by the United States Supreme Court as requiring "ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514, 128 S.Ct. 2020, 2025, 170 L.Ed.2d 912 (2008). In *White v. Commonwealth*, 178 S.W.3d 470 (Ky. 2005), the Kentucky Supreme Court unanimously invoked the rule to construe the "intentional killing of a public official" statutory aggravator which renders a defendant eligible for the death penalty. *See also Haymon v. Commonwealth*, 657 S.W.2d 239 (Ky. 1983) (applying rule in construing statute governing eligibility for probation for certain offenses involving use of a weapon); *Commonwealth v. Stinnett*, 144 S.W.3d 829 (Ky. 2004) (applying rule in construing statute regarding jury determination of concurrent/consecutive service of felony sentences).

In the majority of instances, it may be readily discerned whether or not a defendant "possesses" or "obtained" a controlled substance in either the actual or constructive legal sense. Here, however, the issue is more abstract. Once a drug enters the body and either is, or begins to be, metabolized, it is no longer in a form that can be held, controlled, sold, transferred, or used by the defendant or any another person. Our current penal statutes remain silent as to whether or not the legislature ever intended to expand the historic definition of possession so as to

-17-

obtain convictions based solely on blood, urine, or hair samples merely evidencing prior usage. If both precedent and the statutory definition of "possession" were not enough to compel this outcome, any inference that a metabolized drug remained in the "control" of an accused would invite an ambiguity that our rule of lenity otherwise prohibits. Consequently, we find that once a controlled substance is within a person's system the substance is beyond the scope of regulation contemplated by the statute.

Our holding in this case is narrow; evidence of a controlled substance in a person's urine does not establish possession of or the obtaining of a controlled substance within the meaning of KRS 520.050, nor is it sufficient circumstantial evidence by itself to show prior possession by that person. However, other corroborating evidence combined with positive results of a urine test could be sufficient evidence to prove guilt beyond a reasonable doubt depending on the probative value of the corroborating evidence.

Turning to the issue the existence of other evidence of guilt, while each of the appellants were housed within cells or units, along with others, where methamphetamine was obviously present, there existed no direct or circumstantial evidence of any of the appellants possessing or obtaining the methamphetamine other than the urine tests. Video surveillance was admittedly inconclusive as to either who had exchanged methamphetamine or even if methamphetamine was the

substance that was shown on video as being exchanged. Further, there was no testimony tying any of the appellants to the contraband. The only evidence presented against these inmates was the urine testing. While the trial court's determination that the Commonwealth had "presented evidence that can convince a trier of fact that the Defendant[s] consumed illicit substances while in a detention facility," is, given the positive urine test, not unsupported, it is not enough to support a finding of a violation of the statute which requires more than mere consumption. Although circumstantial evidence can support a conviction, the evidence must amount to more than conjecture and speculation, which cannot support a criminal conviction. *Hibbard v. Commonwealth*, 291 S.W.2d 574, 577 (Ky. 1956). The totality of the circumstantial evidence against the appellants in this group is insufficient to support convictions of promoting contraband.

It is this lack of "other" evidence that distinguishes the present matter from the unpublished opinion in *Walters v. Commonwealth*, No. 2014-CA-001341-MR, 2016 WL 3176788 (Ky.App. 2016) (unpublished) (cited by the Commonwealth). A positive urine test was not the only evidence which supported inmate Walter's conviction for promoting contraband. Walters had been observed going into a restroom with four other inmates. Upon investigation by a jailer, a discarded marijuana cigarette and an empty baggie which smelled of marijuana was found in the restroom. Additionally, another inmate testified that Walters

actually smoked the marijuana before the deputy entered the restroom. Similar evidence of guilt is wholly lacking in the case at hand.

Lastly, the trial court referenced the potential application of our doctrine of constructive possession quoting *Johnson v. Commonwealth*, 90 S.W3d 39, 42 (Ky. 2002), *overruled on other grounds by McClanahan v. Commonwealth*, 308 S.W.3d 694 (Ky. 2010), for the proposition that possession "may be proven through either actual possession or constructive possession." Constructive possession allows for convictions in cases where the accused is physically remote from an item, yet as a matter of law still possesses the item. However, constructive possession still requires the accused to be able to exercise dominion and control over the object. Having determined that a person who has already consumed a drug does not control it, constructive possession is inapplicable in this matter.

Having considered and rejected that these criminal convictions can properly be upheld, we feel obliged to mention that this does not mean these inmates should escape being subjected to any consequences for their positive urine tests. Instead, these matters could have been addressed internally by the jail as violations of institutional rules, with any subsequent findings supporting prison discipline only subject to review under the "some evidence" standard as adopted and explained in *Smith v. O'Dea*, 939 S.W.2d 353 (Ky.App. 1997).

Accordingly, we reverse the Campbell Circuit Court's orders which denied the appellants' motions to dismiss and hereby vacate the conditional guilty pleas and judgments for promoting contraband in the first degree entered against these appellants. These matters are remanded to the Campbell Circuit Court for proceedings necessary and consistent with this Opinion to include vacating any persistent felony offender sentences associated with the underlying convictions which have been hereby vacated.

MAZE, JUDGE, CONCURS AND FILES SEPARATE OPINION.

TAYLOR, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

MAZE, JUDGE, CONCURRING:  To begin, I must state that I am uncomfortable with the result reached in the majority Opinion.  The unauthorized presence of controlled substances presents serious security and health risks for prisons, jails, and other correctional facilities.  Clearly, these facilities have a duty to prevent the introduction of illicit substances, and the Commonwealth has a direct interest in punishing those who attempt to do so.  I would also point out that these facilities would face liability if they failed to protect the inmates from illicit substances being introduced into their populations.

Nevertheless, the question in this case is whether the Commonwealth's evidence meets the threshold to prove that each of these demandants committed the offense of promoting contraband in the first degree, as

-21-

defined by KRS 520.050. Unfortunately, the statute appears to be a poor fit with the facts of this case. As the majority opinion correctly holds, that issue is dependent upon the proof necessary to establish that each defendant "possessed" or "obtained" the methamphetamine at issue. I also agree with the majority that the holding of *Nethercutt v. Commonwealth*, 241 Ky. 47, 43 S.W.2d 330 (1931), remains viable despite its age. As a result, the mere presence of methamphetamine in each defendant's system is insufficient to establish that they possessed or obtained the methamphetamine within the Campbell County Detention Center.

Moreover, the other evidence was insufficient as a matter of law to prove that any of the defendants possessed or obtained the methamphetamine while in the facility. The video surveillance lacked sufficient quality to identify specific individuals or even the materials exchanged. Joshua Young did not identify the cell mates with whom he admittedly supplied the methamphetamine. While it seems obvious that Young shared the methamphetamine with his cell mates, there is simply no definitive proof showing that any of these defendants possessed the methamphetamine as contemplated by the statute.

Here, the evidence before the trial court was largely uncontested and was admitted by stipulation, rather than direct testimony. In its role as finder of fact, the trial court had discretion to weigh the weight and credibility of the Commonwealth's evidence. But the Commonwealth still bore the burden of

proving beyond a reasonable doubt that each defendant committed all of the elements of the charged offense. *Lisle v. Commonwealth*, 290 S.W.3d 675, 680 (Ky. App. 2009). And due process requires this Court to review the minimal sufficiency of the evidence supporting a conviction. I must reluctantly agree with the majority that the Commonwealth failed to meet that burden in these cases.[1] Consequently, I fully concur in the majority's decision to vacate the convictions.

TAYLOR, JUDGE, DISSENTING: Respectfully, I dissent. These cases represent perhaps the most unusual conditional plea bargains that I have encountered in my years on this Court. Rather than seeking to suppress evidence, the parties agreed to a bench trial on the merits, with all evidence, whether it be circumstantial or hearsay, being admitted before the trial court without objection. Thereupon, if the trial court denied the defendants' motion to dismiss at the conclusion of the trial, the defendants agreed to enter into their respective conditional guilty pleas, prior to bringing these appeals.

To begin, I believe our review is controlled by CR 52.01 as provided for by Kentucky Rule of Criminal Procedure 13.04. In accordance with CR 52.01,

---

[1] I would also point out that this Court recently reached the same conclusion under very similar facts. *Collins v. Commonwealth*, No. 2020-CA-0720-MR, 2021 WL 3234276 (Ky. App. Jul. 30, 2021). The holding in *Collins* is not binding authority because there has been a motion for discretionary review filed with the Supreme Court in that case. No. 2021-SC-0478-D. But both cases demonstrate the need for a definitive holding by the Supreme Court on the proof necessary to prove the elements of the offense.

at trial, the judge became the finder of fact who also judged the credibility of the witnesses testifying at the trial. The trial judge made substantial findings based on the evidence which this Court may not set aside unless clearly erroneous. CR 52.01. Findings of fact are not clearly erroneous if supported by substantial evidence. *Saylor v. Commonwealth*, 357 S.W.3d 567, 571 (Ky. App. 2012).

While the court's findings were made in response to a motion to dismiss at the end of the trial, they nonetheless are based on evidence presented at the bench trial which forms the basis for the judgments which were entered against each of the defendants and are now on appeal to this Court.

Given these unique circumstances and the trial court having presided over a bench trial for each defendant on the merits of the claims against said defendants, I believe the record contains substantial evidence to support the findings and sustain the convictions. The evidence in each case, being mostly circumstantial and hearsay, included the admission of drug laboratory findings that each defendant had consumed illegal drugs while incarcerated in the jail. As noted, <u>all</u> of this evidence was admitted without objection by the defendants. This, coupled with the video footage of the inmates, was sufficient for the fact-finder to conclude that the defendants either obtained or possessed the drugs while prisoners in the jail, and thus supports a conviction of each defendant under KRS 520.050, in my opinion.

To conclude, the trial court's findings of fact are not clearly erroneous and are supported by substantial evidence. I would affirm all of the defendants' judgments in these appeals.

BRIEFS FOR APPELLANT,
BENTON:

Roy Alyette Durham, II
Frankfort, Kentucky

BRIEFS FOR APPELLANT,
HARTIG, JR.:

Molly Mattingly
Frankfort, Kentucky

BRIEFS FOR APPELLANT,
TURNER:

Shannon Renee Dupree
Frankfort, Kentucky

BRIEFS FOR APPELLANT,
KLUG:

Emily Holt Rhorer
Frankfort, Kentucky

BRIEFS FOR APPELLANT,
GAMBLE:

Steven Nathan Goens
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky

ORAL ARGUMENT FOR APPELLEE:

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky

BRIEFS FOR APPELLANT,
MCGOVNEY:

Kayla D. Deatherage
Frankfort, Kentucky

BRIEFS FOR APPELLANT,
YOUNG:

Julia K. Pearson
Frankfort, Kentucky

BRIEFS FOR APPELLANT,
MAGGARD, JR.:

Travis Bewley
Frankfort, Kentucky

BRIEFS FOR APPELLANT,
RILEY:

Steven J. Buck
Frankfort, Kentucky

BRIEFS FOR APPELLANT,
WALTERS:

Kathleen K. Schmidt
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLANTS:

Molly Mattingly
Kayla D. Deatherage
Frankfort, Kentucky