NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3409

THE STATE OF OHIO, APPELLEE *v.* FOREMAN, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Foreman*, Slip Opinion No. 2021-Ohio-3409.]**

*Criminal law—Venue—R.C. 2901.12—Sufficiency of the evidence—Possession of drugs—Mere presence of drug metabolites in defendant's body, without more, is insufficient evidence to establish venue in the charging county for drug-possession offense—Court of appeals' judgment reversed and conviction vacated.*

(No. 2020-0866—Submitted May 12, 2021—Decided September 30, 2021.)

APPEAL from the Court of Appeals for Seneca County, No. 13-19-01,

2020-Ohio-3145.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we consider a question of venue: whether appellee, the state of Ohio, proved beyond a reasonable doubt that appellant, Kelly A. Foreman, committed the offense of possession of cocaine or any element of that offense

within Seneca County. Because we conclude that it did not, we reverse the judgment of the Third District Court of Appeals and vacate Foreman's conviction for possession of cocaine.

## I. Relevant Background

{¶ 2} After a bench trial in the Seneca County Court of Common Pleas, Foreman was convicted of one count of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(a), a fifth-degree felony. The charge stemmed from the results of drug testing that was performed soon after Foreman gave birth to her son, J.B., at Tiffin Mercy Hospital, which is in Seneca County, Ohio. After Foreman gave birth to J.B., he exhibited symptoms of drug withdrawal and was tested for illegal substances. The test results showed the presence of cocaine metabolites (the compounds that are produced when the body metabolizes cocaine) in the umbilical-cord tissue and in J.B.'s urine and meconium.

{¶ 3} At trial, Dr. Christian Meade, a pediatrician with Tiffin Mercy Hospital, testified regarding his treatment of J.B. and the tests that were performed. He explained that the meconium accumulates "for several months" and generally reflects "what the baby has been exposed to in the second or third trimester." Notably, Dr. Meade did not testify as to the amount of time that cocaine metabolites remain in the umbilical-cord tissue or a newborn's urine after the mother's ingestion of cocaine. Nor did the state introduce any other evidence on that subject.

{¶ 4} Because J.B. tested positive for illegal substances, Megan Steyer, who was a protective-services caseworker with the Seneca County Department of Job and Family Services, interviewed Foreman. Steyer testified that Foreman admitted to using cocaine 6 to 12 times while she was pregnant, with the most recent use having been about two weeks before J.B.'s birth. Foreman informed Steyer, however, that she never used cocaine in front of her children, that her fiancé did not know about her cocaine use because she used it while he was at work, and that she did not use it at her residence in Seneca County.

{¶ 5} At trial, Foreman did not dispute any of the evidence presented and even acknowledged during closing arguments that the state offered circumstantial evidence that "at some point in the past * * * [she] had somewhere and sometime possessed cocaine." Rather, Foreman argued that the state failed to prove venue in Seneca County beyond a reasonable doubt and moved for acquittal pursuant to Crim.R. 29 on that basis. Foreman insisted that once a controlled substance assimilates into a person's body, the person no longer has control over it and does not possess it. Thus, Foreman asserted that she may have possessed cocaine when she ingested it but that the state presented no evidence proving that she possessed cocaine in Seneca County.

{¶ 6} In response, the state argued that it proved "beyond a reasonable doubt that Ms. Foreman did possess cocaine in Seneca County, as it was in her body at the time she gave birth to her son." The trial court ultimately agreed with the state, denied Foreman's Crim.R. 29 motion, found Foreman guilty of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(a), and sentenced her to a three-year period of community control.

{¶ 7} On appeal, Foreman maintained that the state failed to establish venue in Seneca County. In a split decision, the court of appeals disagreed with Foreman and affirmed her conviction for possession of cocaine. 2020-Ohio-3145, 155 N.E.3d 168, ¶ 16, 18. In doing so, the majority reasoned that for purposes of establishing that a defendant possessed a controlled substance in a particular county, "it is of no consequence whether the controlled substance [was] discovered in [the] defendant's pocket or in any cellular matter expelled by his or her body." *Id*. at ¶ 16. It concluded that the state presented sufficient evidence that Foreman possessed cocaine in Seneca County based on the "cocaine discovered in J.B.'s umbilical cord, urine, and meconium, which were collected after his birth at Tiffin Mercy Hospital." *Id*.

**{¶ 8}** We accepted Foreman's discretionary appeal to address the following proposition of law: "Because a conviction for drug possession requires the state to prove that an offender 'ha[d] control over a thing or substance,' the mere presence of drug metabolites in a defendant's body, without more, does not suffice to establish venue in the charging county." 160 Ohio St.3d 1407, 2020-Ohio-4574, 153 N.E.3d 106, quoting R.C. 2925.01(K).

## II. Analysis

**{¶ 9}** At the heart of the parties' dispute is the question whether a defendant may possess cocaine within the meaning of R.C. 2925.11(A) by having cocaine metabolites in his or her body. The court of appeals held that a defendant may do so and that the state proved venue beyond a reasonable doubt because "Foreman possessed the cocaine discovered in J.B.'s umbilical cord, urine, and meconium, which were collected after his birth at Tiffin Mercy Hospital." 2020-Ohio-3145 at ¶ 16. Stated differently, the court of appeals determined that Foreman committed the element of "possession" in Seneca County at the time that she gave birth; the presence of cocaine in her body at that moment (as evidenced by the positive drug-test results), in and of itself established possession within the meaning of R.C. 2925.11. *See id.* And because the birth occurred at a hospital in Seneca County, venue was sufficiently established. *Id.* at ¶ 16-17.

**{¶ 10}** The state and amicus curiae Ohio Prosecuting Attorneys Association maintain that theory here. However, the state also asserts that when all the facts and circumstances are viewed together—including the positive drug-test results and the evidence showing that Foreman resided in Seneca County during her pregnancy, gave birth to J.B. there, and admitted to using cocaine on multiple occasions while pregnant—it is clear that venue in Seneca County was proved.

**{¶ 11}** Foreman disagrees, arguing that a person cannot possess a controlled substance that has already been assimilated into that person's body. At that point, Foreman asserts, the person no longer "ha[s] control over" the substance. And

therefore, Foreman contends, the state failed to prove venue beyond a reasonable doubt because it submitted no evidence at trial showing that she possessed cocaine in Seneca County.

*A. Applicable law*

{¶ 12} Article I, Section 10 of the Ohio Constitution affords the accused the right to "a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." That provision accordingly "fixes venue, or the proper place to try a criminal matter * * *." *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). Additionally, R.C. 2901.12 contains "the statutory foundation for venue," *State v. Draggo*, 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981), and provides that "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and * * * in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A).

{¶ 13} "Under Article I, Section 10 and R.C. 2901.12, evidence of proper venue must be presented in order to sustain a conviction for an offense." *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 20. Although venue is not a material element of any criminal offense, *Draggo* at 90, it is a fact that must be proved at trial beyond a reasonable doubt, unless it has been waived by the defendant, *Headley* at 477, citing *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907), paragraph one of the syllabus. Therefore, a "conviction may not be had" if the state fails to prove beyond a reasonable doubt that the defendant committed the alleged offense or an element of the offense in the charging county. *State v. Nevius*, 147 Ohio St. 263, 71 N.E.2d 258 (1947), paragraph three of the syllabus; *see also Hampton* at ¶ 19. The state need not prove venue "in express terms," provided that "all the facts and circumstances in the case" establish it. *Headley* at 477, citing *Dickerson* at paragraph one of the syllabus.

{¶ 14} Here, the state charged Foreman with possession of cocaine in violation of R.C. 2925.11(A). That statute provides, "No person shall knowingly

obtain, possess, or use a controlled substance," R.C. 2925.11(A), and R.C. 2925.11(C) establishes separate offenses based on the identity of the controlled substance involved. *See State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, ¶ 13. Relevant here, R.C. 2925.11(C)(4) prescribes the offense of "possession of cocaine." And R.C. 2925.01(K) defines the terms "possess" and "possession" as "having control over a thing or substance."

*B. Foreman did not have control over the cocaine at the time that she gave birth*

{¶ 15} To establish venue in this case, the state had to prove beyond a reasonable doubt that Foreman committed the offense of possession of cocaine or an element of that offense within Seneca County. Because the parties dispute whether the "possession" element of the offense occurred in Seneca County, we focus our analysis on that issue. As noted above, Foreman and the state disagree regarding whether Foreman possessed cocaine in Seneca County at the time that she gave birth to J.B. at Tiffin Mercy Hospital, where toxicology reports revealed that cocaine metabolites were present in the umbilical cord and J.B.'s urine and meconium.

{¶ 16} The first question that we must consider is whether, at the time of J.B.'s birth, Foreman possessed, i.e., had control over, the assimilated cocaine that was subsequently discovered in the umbilical cord and J.B.'s urine and meconium. Perhaps unsurprisingly, this court has never addressed the element of "possession" in that context. Other courts have considered similar issues, however, and the great majority of them have held that the mere presence of a controlled substance in a person's blood or urine does not establish that the person possessed the controlled substance. *See, e.g.*, *State v. Griffin*, 220 Wis.2d 371, 381, 584 N.W.2d 127 (1998) (holding that "the presence of drugs in [the defendant's] urine and blood stream, without more, is insufficient evidence on which to base a possession conviction"); *State v. Harris*, 361 N.C. 400, 403-404, 646 S.E.2d 526 (2007) (concluding that a positive urinalysis indicating the presence of marijuana metabolites alone is

insufficient evidence to prove that the defendant possessed marijuana); *State v. Montaño*, 136 N.M. 144, 2004-NMCA-094, 95 P.3d 1059, ¶ 9 (holding similarly).

{¶ 17} The reasoning underlying those conclusions is that when a controlled substance is assimilated into a person's body, the person loses the ability to control or possess the substance. *See, e.g.*, *State v. Hornaday*, 105 Wash.2d 120, 126-127, 713 P.2d 71 (1986), *superseded by statute on other grounds as stated in State v. Ortega*, 177 Wash.2d 116, 126, 297 P.3d 57 (2013); *State v. Thronsen*, 809 P.2d 941, 943 (Ala.App.1991). The Kansas Supreme Court articulated it well in *State v. Flinchpaugh*, 232 Kan. 831, 834, 659 P.2d 208 (1983):

> Once a controlled substance is within a person's system, the power of the person to control, possess, use, [or] dispose of * * * [it] is at an end. The drug is assimilated by the body. The ability to control the drug is beyond human capabilities. The essential element of control is absent. Evidence of a controlled substance after it is assimilated in a person's blood does not establish possession or control of that substance.

{¶ 18} By way of contrast, when a person ingests a drug that has been placed in a small plastic bag or another type of container to conceal it within the person's body, the person may still exercise control over the drug. *See State v. Rudd*, 70 Wash.App. 871, 873, 856 P.2d 699 (1993); *People v. Spann*, 187 Cal.App.3d 400, 403-404, 232 Cal.Rptr. 31 (1986); *see also United States v. Shuler*, 373 Fed.Appx. 949, 952-953 (11th Cir.2010). Once the drug is retrieved or expelled from the person's body, the person may choose what to do with it. Stated differently, possession of the drug does not cease in that situation, *see Rudd* at 873, because the person ingested the drug in a way that prevented it from assimilating into the person's body.

**{¶ 19}** We find this reasoning persuasive and accordingly reject the state's argument that Foreman possessed cocaine at the time that she gave birth to J.B. in Seneca County. As noted above, the statutory definition of the word "possession" requires having *control* over a substance or thing. *See* R.C. 2925.01(K). Foreman, by her own admission, ingested cocaine several times during her pregnancy. However, once she ingested the cocaine and it assimilated into her body, she no longer had control over it.

**{¶ 20}** Consequently, at the time of J.B.'s birth, Foreman was unable to exercise restraint, direct influence, or exert power over the cocaine that she had previously ingested. *See Webster's Third New International Dictionary* 496 (2002) (defining the word "control" as "to exercise restraining or directing influence over" or "to have power over"). There was no longer an array of actions available to Foreman by which she could do with the cocaine whatever she wanted—whether that be to dispose of it, retrieve it, or destroy it. Because Foreman did not "hav[e] control over" the cocaine at any point during her time at the hospital, she did not possess it. *See* R.C. 2925.01(K). We therefore conclude that evidence of the mere presence of cocaine metabolites in Foreman's body at the time that she gave birth to J.B. at Tiffin Mercy Hospital was insufficient to prove that she possessed cocaine in Seneca County.

**{¶ 21}** Further, we find the state's position to the contrary rather troubling. As noted above, the state maintains that "to simply establish venue the connection between Foreman's possession of cocaine was made when the hospital tested the umbilical cord affirming that yes, she still had possession of cocaine in that moment, in Seneca County, Ohio." Under that theory, a person could be charged with the offense of possession of a controlled substance in every single Ohio county in which the person tests positive for a controlled substance, regardless of where or when the person ingested it.

{¶ 22} For instance, consider a person who ingests cocaine in Ashtabula County and then drives sober to Hamilton County a few days later. By the state's reasoning, that person could be charged with possession of cocaine in each and every county through which that person traveled, based on the sole fact that some assimilated form of cocaine remained in his system. The only evidence that the state would need to present to prove the offense in the charging county would be the person's positive drug test.

{¶ 23} Or imagine if that same person ingested cocaine in a country where possession of cocaine in small amounts for personal use is legal, *see* Tony Dunnell, *Drugs in Peru: The Laws of Legal and Illegal Possession*, New Peruvian (May 23, 2018), http://www.newperuvian.com/drugs-in-peru-legal-and-illegal/ (accessed Sept. 23, 2021) [https://perma.cc/DK5B-4LZY], and then traveled to Ohio. Because cocaine metabolites can generally be detected in urine for days and in some cases for over a week after ingestion, *see* Joyce Nickley et al., *A sensitive assay for urinary cocaine metabolite benzoylecgonine shows more positive results and longer half-lives than those using traditional cut-offs*, 9 Drug Testing & Analysis 1214-1216 (2017), available at https://analyticalsciencejournals.onlinelibrary. wiley.com/doi/pdf/10.1002/dta.2153 (accessed Sept. 23, 2021) [https://perma.cc/JQN3-A3UA], that person could be prosecuted for cocaine possession in any Ohio county that he enters—even though he ingested it in a country where its use is legal over a week before he entered Ohio.

{¶ 24} This court could go on with scenarios illustrating the expansiveness of the state's position. But we will stop here and note that adopting the state's position—i.e., that a person commits the element of "possession" in the charging county merely when the assimilated controlled substance is in the person's body— seems dangerously similar to the criminalization of the "status" of having previously used or ingested a controlled substance. *See Robinson v. California*, 370 U.S. 666-667, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), syllabus (holding that a

California statute violated the Eighth and Fourteenth Amendments to the United States Constitution, as applied, because it made "the 'status' of narcotic addiction a criminal offense for which the offender may be prosecuted 'at any time before he reforms,' * * * even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there"); *State v. Robinson*, 2011 UT 30, 254 P.3d 183, ¶ 31 ("simply having the metabolite of a controlled substance in the body is similar to a 'status' of having previously ingested the controlled substance"). We need not reach that issue today, however, in light of our conclusion that the mere presence of cocaine metabolites in Foreman's body was insufficient evidence to prove that she possessed cocaine in Seneca County.

*C. There was insufficient circumstantial evidence presented establishing venue in Seneca County*

{¶ 25} We also conclude that there was insufficient circumstantial evidence presented to establish venue in Seneca County. As noted above, the state contends that the positive drug-test results, in conjunction with the fact that Foreman resided in Seneca County during her pregnancy, gave birth to J.B. there, and admitted to using cocaine on multiple occasions while she was pregnant established venue in Seneca County. The state emphasizes that venue need not be proved in express terms but may be established by all the facts and circumstances in the case.

{¶ 26} It is true that the presence of assimilated drugs in a person's system may be circumstantial evidence of the person's prior possession of the drug. *See Griffin*, 220 Wis.2d at 381, 584 N.W.2d 127 ("Although the presence of drugs in someone's system, standing alone, is insufficient to support a conviction for possession, the presence of drugs is circumstantial evidence of prior possession"); *Flinchpaugh*, 232 Kan. at 835, 659 P.2d 208 (same). Based on a positive drug-test result, a fact-finder may deduce that the defendant ingested the drug and likely possessed it but is left to speculate as to *where* that prior possession occurred. Thus, for purposes of proving venue under R.C. 2901.12(A), sufficient corroborating

evidence is necessary to prove beyond a reasonable doubt that the defendant possessed the drug within the charging county. *See Logan v. Cox*, 89 Ohio App.3d 349, 354, 624 N.E.2d 751 (4th Dist.1993); *Griffin* at 381; *Flinchpaugh* at 835-836.

{¶ 27} Here, there was no such corroborating evidence presented at trial "tending to prove" that Foreman possessed the cocaine at a prior time in Seneca County. *See State v. Nicely*, 39 Ohio St.3d 147, 155, 529 N.E.2d 1236 (1988). The fact that Foreman lived in Seneca County when she was pregnant with J.B. does not establish that she possessed cocaine there. And in fact, evidence presented at trial suggested otherwise—the protective-services caseworker testified that Foreman stated that she never used cocaine in front of her children, that her fiancé did not know about her cocaine use, and that she did not use it at her home in Seneca County. Nor does the fact that Foreman gave birth to J.B. in Seneca County establish that Foreman possessed cocaine there.

{¶ 28} The state repeatedly emphasizes in its merit brief that Foreman admitted to using cocaine while she was pregnant with J.B. and estimated that she used cocaine within two weeks before J.B.'s birth. It maintains that this suggests that Foreman knowingly possessed cocaine within Seneca County. But again, that evidence does not prove venue in Seneca County beyond a reasonable doubt. It merely establishes that Foreman possessed cocaine somewhere at some time, not that Foreman possessed cocaine in Seneca County.

{¶ 29} The record before us does not reflect that Foreman ever informed the caseworker of where she ingested the cocaine, let alone that she did so in Seneca County. *See State v. Barno*, 11th Dist. Portage No. 2000-P-0100, 2001 WL 1116908, *5-6 (Sept. 21, 2001) (noting that the underage defendant admitted that she had been drinking alcoholic beverages at a hotel located within the charging county). Nor did the state present evidence that Foreman had been in Seneca County during the two-week timeframe in which she admitted to using cocaine prior to J.B.'s birth. The state offered no evidence concerning the amount of time

that cocaine metabolites remain in a person's system after ingesting it or evidence demonstrating Foreman's whereabouts during such a timeframe. *See State v. Scott*, 8th Dist. Cuyahoga No. 63234, 1994 WL 173716, *2-3 (May 5, 1994) (reasoning that a toxicologist's testimony regarding how long cocaine metabolites remain in a person's system after ingestion and evidence that the defendant was working in the charging county during that timeframe was sufficient to establish that the defendant possessed cocaine in the charging county); *see also State v. McGowan*, 8th Dist. Cuyahoga No. 63491, 1993 WL 311372, *1-2 (Aug. 12, 1993).

{¶ 30} Further, we do not find the cases on which the state and amicus curiae Ohio Prosecuting Attorneys Association rely persuasive, because in those cases there was evidence corroborating positive drug-test results and establishing that the defendants obtained, used, or possessed a controlled substance in the charging county. *See, e.g.*, *State v. Napper*, 3d Dist. Marion No. 9-91-11, 1991 WL 256521, *3 (Nov. 27, 1991) (holding that evidence that the police discovered cocaine and drug paraphernalia at the defendant's residence and testimony regarding the period of time that cocaine metabolites remain in urine was sufficient evidence to establish venue in the charging county); *State v. Moyar*, 3d Dist. Auglaize No. 2-06-10, 2006-Ohio-5974, ¶ 14-18 (police found cocaine in defendant's bedroom and drug paraphernalia on his person); *McGowan* at *2-3 (toxicologist testified that defendant's positive urine screen implicated recent use within two to four hours, and defendant was located within the charging county during that time). No such corroborating evidence was presented in this case, however; there was no evidence that drugs or drug paraphernalia were discovered at Foreman's residence or on her person, and there was no eyewitness testimony that Foreman purchased cocaine in Seneca County. The evidence demonstrated only that Foreman ingested cocaine several times while she was pregnant with J.B. There was no other evidence offered that tended to prove that she possessed the

cocaine at a prior time *in Seneca County*. *See Logan*, 89 Ohio App.3d at 354, 624 N.E.2d 751.

### III. Conclusion

{¶ 31} There is no doubt that the underlying events in this case are unfortunate. But the state had the burden of proving venue beyond a reasonable doubt. *Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, at ¶ 19. And it failed to meet that burden, neglecting to develop its case to sufficiently establish venue. As a result, based on the record before us, we conclude that the state failed to prove beyond a reasonable doubt that Foreman committed the offense of possession of cocaine in Seneca County. Because venue must be proved to sustain a conviction for an offense, *Headley*, 6 Ohio St.3d at 477, 453 N.E.2d 716, citing *Draggo*, 65 Ohio St.2d at 90, 418 N.E.2d 1343, Foreman's conviction for possession of cocaine may not stand. Accordingly, we reverse the judgment of the Third District Court of Appeals holding otherwise and vacate Foreman's conviction for possession of cocaine, R.C. 2925.11(A) and (C)(4).

Judgment reversed
and conviction vacated.

KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Derek W. DeVine, Seneca County Prosecuting Attorney, and Rebeka Beresh, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Craig M. Jaquith, Assistant Public Defender, for appellant.

Paul A. Dobson, Wood County Prosecuting Attorney, and David T. Harold, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

David J. Carey, Elena Thompson, and Freda J. Levenson, urging reversal for amicus curiae American Civil Liberties Union of Ohio Foundation.

_____