[Cite as *State v. McWilliams*, 2024-Ohio-97.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellant | : | C.A. No. 2023-CA-16 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 014 |
| | : | |
| DEREK ULLMAN McWILLIAMS | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 12, 2024

. . . . . . . . . . .

KEVIN S. TALEBI & JANE A. NAPIER, Attorneys for Appellant

ADDIE J. KING, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Appellant the State of Ohio appeals from a judgment of the Champaign County Common Pleas Court that acquitted Appellee Derek Ullman McWilliams of aggravated possession of drugs pursuant to a Crim.R. 29 motion. This Court granted leave to appeal based on the State's argument that it is not appealing the judgment of acquittal but is instead seeking review of a discreet legal issue regarding venue that is

capable of repetition, yet evading review. Because we find that the trial court erred in refusing to consider whether venue could be appropriate pursuant to R.C. 2901.12(H)(3), the State's assignment of error is sustained; however, we do not disturb the judgment of acquittal.

### I. Procedural History and Facts

{¶ 2} On January 3, 2023, McWilliams was indicted by the Champaign County grand jury on one count of aggravated possession of drugs, in violation of R.C. 2925.11(A),(C)(1)(a), a felony of the fifth degree; one count of operating a vehicle while under the influence of a listed controlled substance or a listed metabolite of a controlled substance ("OVI") (500 ng/ml or more of methamphetamine in urine), in violation of R.C. 4511.19(A)(1)(j)(ix),(G)(1)(a), a misdemeanor of the first degree; and one count of OVI (500ng/ml or more amphetamine in urine), in violation of R.C. 4511.19(A)(1)(j)(i),(G)(1)(a), a misdemeanor of the first degree. Each of the offenses listed in the indictment was alleged to have occurred in Champaign County, Ohio.

{¶ 3} McWilliams entered a not guilty plea at his arraignment, waived his right to a jury trial, and proceeded to a bench trial on April 11, 2023. At trial, the State presented the testimony of two witnesses: Deputy Daniel Fisher and Parole Officer Victor Bullock.

{¶ 4} Deputy Daniel Fisher, a four-year veteran of the Champaign County Sheriff's Office, testified that on September 17, 2022, he was running routine checks on vehicle registrations while traveling southbound on State Route 4. While running a check of McWilliams' vehicle registration, Deputy Fisher discovered that McWilliams' driver's license was suspended. Fisher made a traffic stop and approached the vehicle from the

passenger side. McWilliams was in the driver's seat while Shelby Riley was in the passenger seat. Fisher requested McWilliams' license and, while he was searching for it, McWilliams explained why his license was suspended. McWilliams was speaking very fast, and his motions appeared erratic, jerking from side to side.

{¶ 5} Deputy Fisher asked if there was anything illegal in the car, and McWilliams pulled a bag containing a green leafy substance from the center console; he claimed it was CBD weed that he could purchase at any gas station. Riley claimed to have a medical marijuana card, pulled out a dispensary container from the glove box, and showed Fisher that it had some "roaches" in it. McWilliams provided his identification card showing that his address was in Union County, Ohio. Riley's address was identified as being in Logan County, Ohio.

{¶ 6} Deputy Fisher asked the occupants to get out of the vehicle in order to conduct a search of the car. During the search, methamphetamine was discovered in a bag which had originally been under the front passenger's seat of the vehicle but was surreptitiously moved by Riley in an attempt to conceal it. McWilliams told Fisher that he had picked up Riley to take her to her mother's house in Clark County but denied knowing anything about drugs in his car. Riley was later charged and convicted related to the methamphetamine that was recovered from the vehicle.

{¶ 7} Deputy Fisher testified that, during the traffic stop, McWilliams had very erratic movements and refused to look at Fisher, or if he did, then he would look away very fast. When McWilliams was looking for his identification card, his movements were jerky and twitchy. Fisher attributed McWilliams' mannerisms to methamphetamine use

and therefore asked McWilliams to consent to a urine sample. McWilliams stated that "he would be hot because he parties," meaning that he would test positive for drugs. Fisher asked what McWilliams would be "hot" for, and McWilliams responded, "marijuana and some lines." When Fisher asked for clarification as to the "lines" substance, McWilliams stated "cocaine, methamphetamine, and probably some meds." Tr. 22. McWilliams claimed to have "partied" on Monday, which was five days prior to the traffic stop. He did not identify where he partied.

{¶ 8} Deputy Fisher collected a sample of McWilliams' urine, which was sent to the Ohio State Patrol Crime Laboratory. The results of the testing, which were stipulated to by the parties, indicated that the urine screen was positive for methamphetamine with results greater than 1,000 ng/mL and was positive for amphetamine with results greater than 1,000 ng/mL. Fisher testified that methamphetamine is a Schedule II controlled substance.

{¶ 9} State of Ohio Parole Officer Victor Bullock testified that he had been a parole officer for 20 years and he was supervising McWilliams on post-release control out of Union County. Officer Bullock discussed the September 17, 2022 traffic stop with McWilliams, who denied knowing anything about the drugs that were in the car that day, but admitted to having used a lot of cocaine as well as methamphetamines and marijuana. As a result, Bullock ordered McWilliams to get himself into treatment. When questioned if he asked McWilliams whether McWilliams had used drugs on the date of the traffic stop, Bullock responded, "Well, the conversation was – well, he did admit that he did use. [McWilliams] had confirmed possession, that he was partying, using lots of cocaine, but

he did not give me a time frame."   Tr. 31.

{¶ 10} Following the admission of the State's exhibit, which was a copy of the stipulations, the State rested.   Relevant to this appeal, McWilliams made a Crim.R. 29 motion for acquittal challenging venue for the aggravated drug possession charge.   The State conceded that had McWilliams only been charged with the drug possession offense, and the only evidence submitted of possession was the urinalysis results showing that he had methamphetamine in his system, then the State would have been unable to proceed. However, the State argued that because McWilliams had been charged with multiple offenses related to the same underlying methamphetamine use, the State sufficiently proved venue because the events occurred in a continuing course of conduct and at least one element of one of the offenses occurred in Champaign County.   The State relied on R.C. 2901.12(G) and 2901.12(H)(3) to support its position, arguing that the basis for McWilliams' possession charge was the same methamphetamine that was the basis of the OVI charge, meaning that McWilliams used methamphetamine and continued his course of conduct by operating a motor vehicle while under the influence of that same methamphetamine in Champaign County.

{¶ 11} In relying on the Ohio Supreme Court's decision in *State v. Foreman*, 166 Ohio St.3d 204, 2021-Ohio-3409, 184 N.E.3d 70, the trial court found that the State had not offered sufficient evidence that McWilliams committed the drug possession offense in Champaign County.   Specifically, the trial court stated that "the State has not offered evidence that the Defendant had been in Champaign County before the stop, what he was doing in Champaign County before the stop, [or] that the metabolites that were found

in State's Exhibit 1 would have been in his system at the same time that the Defendant was in Champaign County." Tr. 39. When the trial court asked the State if there was any additional evidence as to when McWilliams had ingested the methamphetamine, the State argued that because McWilliams had twice the minimum level in his urine for the per se OVI violation, an inference could be made as to when he ingested the drugs. The trial court responded that it could not make such an inference without an expert toxicologist to testify about the metabolism of the drug. Consequently, the trial court sustained McWilliams' Crim.R. 29 motion, finding that the State had not presented sufficient evidence to prove venue, and it acquitted him of aggravated possession of drugs.

{¶ 12} No additional evidence was introduced and, after the defense rested, the trial court found McWilliams guilty of the two misdemeanor OVI counts. Following McWilliams' sentencing on the misdemeanor charges, the State filed a motion for leave to appeal the trial court's legal conclusion regarding venue for the felony drug charge. This Court granted the State leave to appeal.

## II. Assignment of Error

{¶ 13} The State raises a single assignment of error on appeal, which states:

The trial court's legal and evidentiary findings regarding venue were

in error as the State presented sufficient evidence that venue was proper in

Champaign County pursuant to R.C. 2901.12.

{¶ 14} The State argues first that the trial court misconstrued the import of *Foreman*, 166 Ohio St.3d 204, 2021-Ohio-3409, 184 N.E.3d 70, and contends that case

is distinguishable.  Secondly, the State argues that the trial court failed to address the applicability of R.C. 2901.12(G) and (H), which the State argues permitted McWilliams to be charged with and convicted of all counts in Champaign County, as the offenses constituted a continuing course of criminal conduct.

### a. Standard of Review

{¶ 15} "A directed verdict of acquittal by the trial judge in a criminal case is a 'final verdict' within the meaning of R.C. 2945.67(A) which is not appealable by the state as a matter of right or by leave to appeal pursuant to that statute."  *State v. Keeton*, 18 Ohio St.3d 379, 481 N.E.2d 629 (1985), paragraph two of the syllabus.  "In cases resulting in a judgment of acquittal, however, the prosecution may nevertheless appeal, by leave of court, evidentiary rulings and rulings on issues of law, because those rulings fall within the language of 'any other decision, except the final verdict,' in R.C. 2945.67(A)." (Citations omitted.) *State v. Pawelski*, 178 Ohio App.3d 426, 2008-Ohio-5180, 898 N.E.2d 85, ¶ 11 (2d Dist.).  Accordingly, under R.C. 2945.67(A), a court of appeals has discretion to review the rulings of substantive law that result in a judgment of acquittal as long as the judgment itself is not appealed.  *State v. Bistricky*, 51 Ohio St.3d 157, 159-160, 555 N.E.2d 644 (1990).  In this case, we granted the State's request for leave to appeal the trial court's ruling on an issue of law.  We review questions of law under a de novo standard of review.  *State v. Clay*, 2d Dist. Miami No. 2015-CA-17, 2016-Ohio-424, ¶ 5.

### b. Venue

{¶ 16} "Section 10, Article I of the Ohio Constitution fixes venue, or the proper place to try a criminal matter, as follows: ' * * * In any trial, in any court, the party accused

shall be allowed * * * a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed * * *.'  Thus, the rule is that the place of trial is to be where the offense occurred."  *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983).  "Venue is not a material element of any offense charged.  The elements of the offense charged and the venue of the matter are separate and distinct." *State v. Draggo*, 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981).  Nevertheless, "[u]nder Article I, Section 10 and R.C. 2901.12, evidence of proper venue must be presented in order to sustain a conviction for an offense."  (Citations omitted.)  *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 20.  "In the prosecution of a criminal case, it is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment." *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907), syllabus.  "[I]n all criminal prosecutions, venue is a fact that must be proved at trial unless waived."  *Draggo* at 90, citing *State v. Nevius*, 147 Ohio St. 263, 71 N.E.2d 258 (1947).

{¶ 17} "Under Ohio's venue statute, R.C. 2901.12, venue generally lies in the territory in which the offense is committed. R.C. 2901.12(A). However, venue is also proper in other territories, under special circumstances."  *State v. Moore*, 6th Dist. Erie No. E-18-064, 2020-Ohio-6781, ¶ 42.  R.C. 2901.12 states, in relevant part:

> (A) The trial of a criminal case in this state shall be held in a court having
>
> jurisdiction of the subject matter, and * * * in the territory of which the offense
>
> or any element of the offense was committed.

* * *

(G) When it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions.

* * *

(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

* * *

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

{¶ 18} "R.C. 2901.12(G) and (H) are statutory reflections of the modern mobility of criminals to perform unlawful deeds over vast geographical boundaries. The above-noted statutory provisions effectuate a sensible, efficient approach to justice by permitting one court to hear a matter which has roots in several court jurisdictions." *Draggo*, 65 Ohio St.2d at 90, 418 N.E.2d 1343. "R.C. 2901.12(H) exists to promote judicial economy and allow the state to prosecute multiple offenses during one trial in one county." *State*

*v. Moore*, 169 Ohio St.3d 18, 2022-Ohio-1460, 201 N.E.3d 834, ¶ 20.

### c. Analysis

{¶ 19} McWilliams was charged with aggravated possession of drugs in violation of R.C. 2925.11(A),(C)(1)(a). The statute provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance[.]" R.C. 2925.11(A). In this case, the controlled substance at issue was methamphetamine, a Schedule II controlled substance, which falls under section 2925.11(C)(1)(a). " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "[W]hen a controlled substance is assimilated into a person's body, the person loses the ability to control or possess the substance." *Foreman*, 166 Ohio St.3d 204, 2021-Ohio-3409, 184 N.E.3d 70, at ¶ 17, 19. Accordingly, an individual cannot be in "possession" of a controlled substance, as is required under R.C. 2925.11(A), if the possession is based on the mere presence of the substance that was assimilated into the person's body.

{¶ 20} As the State conceded, McWilliams was not in possession of drugs at the time of the traffic stop in Champaign County as it is defined in R.C. 2925.11(A). The State informed the trial court that "we're not going to be able to establish that the Defendant used drugs in Champaign County" or that any element of that offense was committed in Champaign County. Tr. 13, 44. However, the State argued that they did not have to identify where or when McWilliams used any drugs, because since McWilliams' urine screen showed that he had consumed methamphetamine, he was

unlawfully in possession of the methamphetamine at some point in time. Then, at some point after taking the drugs, he proceeded to drive his vehicle into Champaign County while under the influence of that same methamphetamine, thereby constituting a continuous course of criminal conduct. The State relied primarily on R.C. 2901.12(H), which provides that, "[w]hen an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred." Offenses "committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective," constitute prima-facie evidence to establish a course of criminal conduct. R.C. 2901.12(H)(3). The State further argued that R.C. 2901.12(G) allowed the State to pursue the charge in Champaign County, although it is unclear how that statute purportedly helps the State since the State did not provide any evidence that the offense was committed in two or more jurisdictions, one of which was Champaign County.

{¶ 21} The trial court rejected the State's argument and found that the State had failed to present sufficient evidence of venue with respect to the charge of aggravated possession of drugs. In deciding whether the State sufficiently established venue, the trial court questioned, "where is the evidence that [the aggravated possession of drugs] occurred in Champaign County?" Tr. 38. The trial court stated that "the State has not offered evidence that the Defendant had been in Champaign County before the stop, what he was doing in Champaign County before the stop, [or] that the metabolites that were found in State's Exhibit 1 would have been in his system at the same time that the

Defendant was in Champaign County." Tr. 39. The trial court relied heavily on *Foreman* to support its decision sustaining McWilliams' Crim.R. 29 motion.

{¶ 22} In *Foreman*, the defendant gave birth to a baby boy at Tiffin Mercy Hospital, located in Seneca County, Ohio. Following the baby's birth, it was discovered that the umbilical-cord tissue and the child's urine and meconium tested positive for the presence of cocaine metabolites. *Foreman*, 166 Ohio St.3d 204, 2021-Ohio-3409, 184 N.E.3d 70, at ¶ 2. Foreman was confronted about the positive test results and admitted that she had consumed cocaine several times during the course of her pregnancy, including as recently as a week or two prior to giving birth. However, Foreman denied using any drugs at her home, which was located in Seneca County. Relying on the positive drug tests collected from the hospital, Foreman was indicted on a single count of possession of cocaine in Seneca County. Following a bench trial, Foreman was convicted as charged. *Id.* at ¶ 6.

{¶ 23} The Ohio Supreme Court reversed Foreman's conviction, finding that the State failed to prove that Foreman knowingly possessed cocaine in Seneca County. *Id.* at ¶ 31. The Court reasoned that the statutory definition of the word "possession" requires an individual to have control over a substance or thing. But when a person ingests a controlled substance, it assimilates into the body and the individual no longer has control over it. Thus, when the presence of cocaine metabolites was discovered at the time Foreman gave birth to her son, she could not have been in possession of cocaine because she could not have controlled it. *Id.* at ¶ 20.

{¶ 24} Although the Court found that Foreman had not been in possession of

cocaine at the hospital, it considered whether the State had presented circumstantial evidence that Foreman possessed cocaine somewhere else in Seneca County. The Court noted that "[b]ased on a positive drug-test result, a fact-finder may deduce that the defendant ingested the drug and likely possessed it but is left to speculate as to *where* that prior possession occurred. Thus, for purposes of proving venue under R.C. 2901.12(A), sufficient corroborating evidence is necessary to prove beyond a reasonable doubt that the defendant possessed the drug within the charging county." (Emphasis sic.) *Id.* at ¶ 26. The Court determined that the State failed to present any such corroborating evidence to prove that Foreman possessed the cocaine at a prior time in Seneca County. Rather, the evidence merely established that Foreman "possessed cocaine somewhere at some time, not that Foreman possessed cocaine in Seneca County." *Id.* at ¶ 28. The Court specifically noted that the State did not present evidence concerning the amount of time that cocaine metabolites remain in a person's system after ingesting it, or that Foreman had been present in Seneca County during the time frame in which she admitted she had consumed cocaine. *Id.* at ¶ 29.

{¶ 25} *Foreman* is certainly pertinent to the case at hand in validating that McWilliams was not in possession of methamphetamine as defined in R.C. 2925.11(A) at the time he was stopped in Champaign County. But unlike *Foreman*, McWilliams was charged with more than one offense. In that regard, R.C. 2901.12(H)(3) may have been applicable, so long as the State could prove that the offenses occurred as a course of criminal conduct in that the offenses were committed in different jurisdictions and "as part of the same transaction or chain of events, or in furtherance of the same purpose or

objective."

**{¶ 26}** A defendant may be indicted in one county for an offense that occurred in another county when the offenses are related by a course of criminal conduct that included crimes in the charging county. *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 131. R.C. 2901.12 "provides the criteria for which territory an offender may be tried for multiple offenses which involve different jurisdictions or venues." *State v. DeBoe*, 6th Dist. Huron No. H-02-057, 2004-Ohio-403, ¶ 38. R.C. 2901.12(H)(3) specifically provides that the offender may be tried in any jurisdiction in which at least one of the offenses, or any element of one of those offenses, occurred when all of the offenses were committed as part of a course of criminal conduct. Moreover, as the Supreme Court of Ohio explained, the purpose of R.C. 2901.12(H) is to promote judicial economy and allow the State to prosecute multiple offenses during one trial in one county. *Moore*, 169 Ohio St.3d 18, 2022-Ohio-1460, 201 N.E.3d 834, at ¶ 20.

**{¶ 27}** When deciding whether the State proved venue, the trial court relied on the jury instruction that requires the trier of fact to consider each count separately. Then, relying on *Foreman*, the trial court determined that the State was required to establish that McWilliams committed aggravated possession of drugs, or at least an element of that offense, within Champaign County as alleged in the indictment. Because the State could not demonstrate either of those requirements, the trial court acquitted McWilliams. To the extent the trial court failed to consider whether the State proved the offenses were committed in different jurisdictions as part of a continuing course of conduct under R.C. 2901.12(H)(3), we sustain the State's assignment of error. In deciding whether the State

established venue, the trial court considered the aggravated possession of drugs offense in a vacuum rather than as part of a potential course of criminal conduct which, if established, would have allowed the prosecution of the aggravated possession of drugs offense to be tried in Champaign County even if none of the elements of that offense were committed in Champaign County.

{¶ 28} R.C. 2901.12(H)(3) does not require that at least one of the elements of *each* offense be committed in the charging county, only that one of the elements of *one* of the offenses charged be committed in the charging county. Although the indictment listed Champaign County as the venue for the aggravated possession of drugs offense, that was not necessarily fatal to the State's case. When alleging that offenses occurred pursuant to a course of criminal conduct under R.C. 2901.12(H)(3), the State may identify the charging county in which the offenses are indicted where at least one of the elements of one of the offenses occurred there. *State v. Armengau*, 2017-Ohio-4452, 93 N.E.3d 284, ¶ 116 (10th Dist.). It is, however, preferable for the State to identify which offenses occurred out-of-county or for the indictment to include "course of conduct" language when the State intends to proceed under R.C. 2901.12(H).

{¶ 29} Whether or not the State submitted sufficient evidence that the offenses occurred in different jurisdictions as part of a course of criminal conduct to satisfy the venue statute in this case, however, is a factual determination that we will not consider. While this Court may accept a State's appeal from an acquittal to evaluate issues of law, we are not to consider the sufficiency of the evidence, because that is tied to the specific facts of the case and would in essence be asking this Court to review the acquittal itself,

which is prohibited by R.C. 2945.67(A). *State ex rel. Ramirez-Ortiz v. Twelfth Dist. Ct. of Appeals*, 151 Ohio St.3d 46, 2017-Ohio-7816, 85 N.E.3d 725, ¶ 9-13.

**{¶ 30}** We do note that the State's reliance on R.C. 2901.12(G), however, is misplaced. R.C. 2901.12(G) provides that, "[w]hen it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions." "[V]enue questions arising under R.C. 2901.12(G) must * * * be resolved by determining whether 'any element' of the offense was committed within the jurisdiction where the trial is to take place.' " *Headley*, 6 Ohio St.3d at 478, 453 N.E.2d 716, citing *Draggo*, 65 Ohio St.2d at 91, 418 N.E.2d 1343. The plain language of this statute does not apply to a course of conduct for multiple offenses as is provided in R.C. 2901.12(H). Moreover, there is no dispute that the State could not prove that any of the elements of aggravated possession of drugs occurred in Champaign County in order to satisfy the requirement that the offense be tried in one of the "two or more jurisdictions" where any element of the offense occurred. Thus, R.C. 2901.12(G) did not apply to this case, and the trial court did not err in failing to consider the applicability of this statute.

**{¶ 31}** Accordingly, we sustain the State's assignment of error to the extent that the trial court failed to consider whether the State proved the offenses were committed in different jurisdictions as part of a continuing course of conduct under R.C. 2901.12(H)(3). However, we overrule the State's assignment of error to the extent that the State challenges the sufficiency of the evidence presented.

### III.    Conclusion

{¶ 32} The trial court erred as a matter of law in failing to consider whether R.C. 2901.12(H)(3) applied.   We note, however, that this legal conclusion has no effect on McWilliams' acquittal in this case.

. . . . . . . . . . . . .


TUCKER, J. and EPLEY, J., concur.